## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ORRIE MCNEILL,** | Civ. No. 2:9-5983 (WJM) |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This is a habeas case.  Following a jury trial, Orrie McNeill was convicted of two counts of heroin possession with intent to distribute, two counts of being a felon in possession of a firearm, and two counts of firearm possession in furtherance of a drug trafficking crime.  After the jury returned its verdict, the felon in possession counts were dismissed.  McNeill was sentenced to roughly 40 years. Now incarcerated and proceeding *pro se*, McNeill moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  In support of his motion, McNeill makes a host of arguments for why his trial counsel was ineffective.  He claims his lawyer provided deficient advice during the plea bargaining stage, that his lawyer made poor strategic decisions at trial, and that his lawyer failed to renew a motion to suppress.

Now pending before the Court are McNeill's original motion under 28 U.S.C. § 2255, three motions to amend, as well as motions to supplement, motions for discovery, and motions for *pro bono* counsel.  For the reasons set forth below, the Court will **GRANT** McNeill's motions to supplement.  The Court will **GRANT** McNeill's first motion to amend, and it will **DENY** McNeill's second motion to amend.  The Court will **GRANT** McNeill's third motion to amend **IN PART**, and it will **DENY** McNeill's third motion to amend **IN PART**.  As explained below, the Court will **DISMISS** each ground for relief asserted by McNeill, save two.  The two remaining claims concern ineffective assistance of counsel during the plea bargaining phase of McNeill's case.  The Court will order an evidentiary hearing to assess the merit of these two remaining claims.  Finally, the Court will **GRANT** McNeill's request for *pro bono* counsel, and it will **DENY**

McNeill's motions for discovery **WITHOUT PREJUDICE**.

## I.    BACKGROUND

On June 3, 2004, a 911 call brought Linden police officers to the lobby of the Swan Motel (the "Motel"), where they encountered Leslie Sanchez crying and bleeding from her head.   Sanchez's boyfriend, Orrie McNeill, was trying to comfort Sanchez at the time.   McNeill appeared evasive but he agreed to escort officers to his room.   After a few steps, McNeill ran off into the parking lot.   He was eventually caught, arrested, and sent to police headquarters.

When the officers finally made it to McNeill's Motel room, they noticed blood on the doorframe.  Lieutenant Donald Tempalsky testified that he entered the room and conducted a preliminary sweep for victims (the "Initial Search"). Lieutenant Tempalsky testified that while he was conducting the Initial Search, he observed drugs and drug paraphernalia in plain view but he did not seize any evidence.  Lieutenant Tempalsky stepped out of the room and called for detectives from the narcotics bureau.  When those detectives arrived, Lieutenant Tempalsky pointed out the items he observed in plain view.  One of the detectives, Detective Goncalves, left the scene to apply for a warrant to search McNeill's Motel room and the car McNeill had parked in the Motel's parking lot.  Judge John Triarsi issued the warrant at 7:25 p.m.  The warrant become effective at 7:30 p.m.

Officers proceeded to conduct a second search of the room (the "Second Search").  McNeill maintains that the Second Search occurred before the warrant was issued; the Government disagrees.  The parties appear to agree, however, that the Second Search began before the physical warrant was delivered to the scene. In the course of the Second Search, officers seized more than one kilogram of heroin and a loaded, 9mm Smith & Wesson semi-automatic handgun with a defaced serial number and ammunition.

On June 14, 2004, the Government filed a criminal complaint charging McNeill with heroin possession with intent to distribute, in violation of 21 U.S.C. § 841.  Compl., *U.S. v. McNeill* ("*McNeill I*"), No. 4-cr-514, ECF No. 1.  On July 1, 2004, the Government sent McNeill's lawyer a draft plea agreement (the "July 1, 2004 Plea Offer") that would have allowed McNeill to plead guilty to one count of heroin possession with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(i), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 30-1 at 7-16.[1]  Under the agreement, McNeill would face a minimum of roughly ten years in prison.  McNeill did not

---

[1]        Unless otherwise indicated, ECF citations refer to the instant matter, *McNeill v. U.S.*, No. 9-5983 (D.N.J), and not the underlying criminal matter.

accept the offer.

On July 13, 2004, a grand jury returned a two count indictment charging McNeill with heroin possession with intent to distribute and with being a felon in possession of a firearm. *McNeill I*, ECF No. 5. On May 12, 2005, the Government sent McNeill's lawyer a plea agreement (the "May 12, 2005 Plea Offer") that would have allowed McNeill to plead guilty to both charges in the indictment. ECF No. 30-1 at 19-25. Under the agreement, McNeill's sentence would be roughly the same as the sentence associated with the July 1, 2004 Plea Agreement. McNeill rejected the offer.

On September 22, 2005, a grand jury returned a superseding indictment that added a charge for gun possession in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c). *McNeill I*, ECF No. 22. On December 8, 2005, a tip from Sanchez led Drug Enforcement Administration Agents to search McNeill's father's Ford Explorer. At the time, McNeill had been in jail for roughly 18 months. The agents discovered a secret compartment containing a loaded handgun, heroin, and a pager, as well as McNeill's birth certificate and social security card.

On December 22, 2005, the Government sent McNeill's lawyer a letter (the "December 22, 2005 Offer") offering McNeill the ability to plead to the superseding indictment and face a minimum prison term of 15 years. ECF No. 30-1 at 34-35. If McNeill refused the offer, the Government indicated it would seek a second superseding indictment. The second superseding indictment would add an additional firearm possession in furtherance of drug trafficking charge under 18 U.S.C. § 924(c). The Government indicated that this second charge would carry a mandatory consecutive minimum sentence of at least 25 years. McNeill claims that his lawyer never informed him about the December 22, 2005 Offer. ECF No. 33 at 4.

On January 12, 2006, a grand jury returned a second superseding indictment charging six counts. *McNeill I*, ECF No. 25. Three counts related to the items recovered from the Motel; three counts related to the items recovered from in the Ford Explorer:

- Count 1: heroin possession with intent to distribute (Motel)
- Count 2: firearm possession in furtherance of drug trafficking (Motel)
- Count 3: heroin possession with intent to distribute (Ford Explorer)
- Count 4: firearm possession in furtherance of drug trafficking (Ford Explorer)
- Count 5: felon in possession of a firearm (Motel)
- Count 6: felon in possession of a firearm (Ford Explorer)

3

On March 20, 2006, the Government provided McNeill with a plea agreement (the "March 20, 2006 Plea Offer") that would have allowed him to plead guilty to one count of heroin possession with intent to distribute and one count of firearm possession in furtherance of drug trafficking. ECF No. 30-1 at 38-44. McNeill rejected the offer.

Before trial, McNeill moved to suppress evidence discovered in his Motel room, and the Honorable William G. Bassler held a suppression hearing. At the hearing, Lieutenant Tempalsky testified that he conducted an initial, warrantless search of McNeill's motel room because he was "concern[ed] somebody else was back in the room injured." Transcript of Evidentiary Hearing ("Evidentiary Hearing Transcript") at 30:13-14, *McNeill I*. Lieutenant Tempalsky testified that when he entered the room, he observed drug paraphernalia and white powder in plain view. He also testified that he observed, through an opening in a closet, a shoe box with cellophane bags. *Id.* at 36:4-37:7. Lieutenant Tempalsky testified that the warrantless search took "[m]aybe a minute or two . . . maybe a minute." *Id.* at 70:4-5. Maintaining that Lieutenant Tempalsky lied about observing contraband in plain view, McNeill argued that the search warrant, which was based on Lieutenant Tempalsky's observations, was invalid. Judge Bassler rejected McNeill's account and credited Lieutenant Tempalsky's testimony. Judge Bassler denied the suppression motion. Evidentiary Hearing Opinion, *McNeill I*.

McNeill was subsequently tried in a bifurcated trial. In the first phase ("Phase One"), McNeill was tried on Counts 1-4 for heroin possession with intent to distribute and firearm possession in furtherance of drug trafficking. At the conclusion of Phase One, the jury returned guilty verdicts on Counts 1-4.

In the second phase of the trial ("Phase Two"), the jury was provided with a stipulation that McNeill had a prior felony conviction. The jury then returned guilty verdicts on the felon in possession counts, Counts 5 and 6.

After trial, McNeill moved for a judgment of acquittal, arguing that the evidence was insufficient to convict him on the charged offenses. *McNeill I*, ECF No. 48. Judge Bassler denied the motion, noting that the evidence of guilt was "overwhelming." *McNeill I*, ECF No. 50. Judge Bassler explained:

> The government established more than sufficient evidence to permit the jury to find beyond a reasonable doubt that Defendant was engaged in possession with the intent to distribute heroin and was in possession of loaded and defaced firearms in furtherance of drug trafficking crimes. The jury had all the evidence it needed to conclude that Defendant was guilty of each count charged in the indictment.

*Id.*

Before sentencing, the Probation Department discovered that McNeill's convictions on Counts 5 and 6 were infirm. *McNeill I*, ECF No. 53 at 3. Counts 5 and 6 charged McNeill with being a felon in possession of a firearm. Though the jury received a stipulation that McNeill had a prior felony conviction, the conviction was actually for a misdemeanor. *Id.* McNeill now maintains that he had informed his lawyer about the error well before trial. ECF No. 26. In any event, after the Probation Department's discovery, McNeill moved to dismiss the entire indictment. *McNeill I*, ECF No. 55. McNeill argued prosecutorial misconduct, both in regard to the defective indictment and the plea bargaining process. The Government denied any misconduct, arguing mutual mistake and arguing that Counts 1-4 were untainted because the trial had been bifurcated.

Judge Bassler agreed with the Government. Judge Bassler concluded that there was no intentional misconduct and that the convictions on Counts 1-4 should stand. Judge Bassler granted a joint motion for a new trial on Counts 5 and 6, and both counts were subsequently dismissed. *McNeill I*, ECF Nos. 57, 58. McNeill was sentenced on Counts 1-4 only. McNeill was sentenced to 481 months, one month in excess of the mandatory minimum. *McNeill I*, ECF No. 59.

McNeill appealed to the Third Circuit, arguing that Judge Bassler should have suppressed the evidence seized from his motel room. The Third Circuit found that Judge Bassler did not commit clear error when he credited Lieutenant Tempalsky's testimony about what was in plain view during the Initial Search. *U.S. v. McNeill*, 285 Fed. Appx. 975, 980-82 (3d Cir. 2008). The Third Circuit also considered whether discrepancies between trial testimony and testimony offered at the evidentiary hearing might have led Judge Bassler to reconsider his credibility determination had Judge Bassler been presented with a renewed suppression motion following trial. One such discrepancy concerned the duration of the Initial Search. During the suppression hearing, Lieutenant Tempalsky testified that the Initial Search took one or two minutes. At trial, another officer present at the scene with Lieutenant Tempalsky testified that he was present in McNeill's Motel room for "15 minutes, 20 minutes, if that." Trial Transcript ("Trial Transcript") at 1.145:24-25, *McNeil I.* Reconciling the seeming conflict, the Third Circuit explained: "it seems plausible that the actual search took only one or two minutes, but that the officers spent nearly 30 minutes in the immediate aftermath determining who would . . . handle the different aspects of the case." *McNeill*, 285 Fed. Appx. at 986. Ultimately, the Third Circuit affirmed the denial of McNeill's motion to suppress.

After the Supreme Court denied McNeill's petition for a writ of certiorari, McNeill timely filed a motion to vacate under 28 U.S.C. § 2255 ("Section 2255").

## II.    LEGAL STANDARDS

### A.    28 U.S.C. § 2255

Section 2255 allows federal prisoners to collaterally attack their sentences. "Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255." *U.S. v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981).

But if a legal argument has not been raised at trial and on direct appeal, the general rule is that the argument is defaulted and may not be raised in a Section 2255 motion. *See Hodge v. U.S.*, 554 F.3d 372, 379 (3d Cir. 2009). This general rule has an exception. A court deciding a Section 2255 motion can consider an argument that was not raised at trial and on direct appeal if the petitioner "can prove either that he is actually innocent of the crime for which he was convicted, or that there is a valid cause for the default, as well as prejudice resulting from the default." *Id.* One way of demonstrating a "valid cause for the default" is by establishing ineffective assistance of counsel. *Id.* If a movant is to prove "actual innocence," he must show that "in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *U.S. v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Forte*, 865 F.2d at 62). If "[the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing." *Booth*, 432 F.3d at 546 (internal quotation and citation omitted); *see also* Rule 8(a) of the Rules Governing § 2255 Proceedings

Finally, "[i]t is the policy of the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010).

### B.    SECOND OR SUCCESSIVE HABEAS PETITIONS

Pursuant to Section 2255(h), a "second or successive" Section 2255 motion cannot be heard by a District Court without permission from a United States Court of Appeals. A motion to amend is not a "second or successive" Section 2255 motion if the original Section 2255 motion has not been decided on the merits. *Ching v. U.S.*, 298 F.3d 174, 177 (2d Cir. 2002) ("Nonetheless, it is clear that for a

petition to be 'second or successive' within the meaning of the statute, it must at a minimum be filed subsequent to the conclusion of "a proceeding that 'counts' as the first. A petition that has reached *final* decision counts for this purpose.") (emphasis in original); *cf. U.S. v. Miller*, 197 F.3d 644, 646 (3d Cir. 1999) ("[I]f a district court recharacterizes a pro se petitioner's poorly drafted post-conviction motion as a § 2255 petition and *dismisses the motion on its merits*, the petitioner is effectively barred from later filing a full-fledged collateral attack upon his conviction.") (emphasis added). McNeill has not yet received a merits decision on a Section 2255 motion. Accordingly, none of McNeill's motions to amend are "second or successive" motions for purposes of Section 2255(h).

### C.   MOTIONS TO AMEND

"Congress provided that a habeas petition 'may be amended . . . as provided in the rules of procedure applicable to civil actions.'" *Mayle v. Felix*, 545 U.S. 644, 649 (2005) (quoting 28 U.S.C. § 2242). Accordingly, Federal Rule of Civil Procedure 15, which governs motions to amend, applies to motions under Section 2255. *United States v. Duffus*, 174 F.3d 333, 336 (3d Cir. 1999). "As such, the Court may grant leave to amend [Section 2255] motions, and should do so 'when justice requires.'" *Snell v. United States*, No. 10-2072, 2012 WL 5498010, at *2 (D.N.J. Nov. 13, 2012) (quoting Fed. R. Civ. P. 15(a)(2)). "Delay alone . . . is an insufficient ground upon which to deny a motion to amend." *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984). However, courts will deny amendments that are futile. *See Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005).

### D.   INEFFECTIVE ASSISTANCE OF COUNSEL

"It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997) (quoting *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)). The test for ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). "Under *Strickland*, a habeas petitioner must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different." *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## III.   DISCUSSION

McNeill filed a motion under Section 2255 to vacate, set aside, or correct his sentence.[2]   In addition, McNeill filed three motions to amend his Section 2255 motion, as well as several motions to supplement the record.  Finally, McNeill filed two motions for *pro bono* counsel, and two motions for discovery.

### A.   SECTION 2255 MOTION

McNeill's Section 2255 motion contains three claims.   McNeill's first argument is that his lawyer was ineffective because he failed to protect McNeill's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.   McNeill's second argument is that his lawyer was ineffective because he allowed McNeill to stipulate to forensic analyses of the drug and gun evidence.  McNeill's third argument is that his lawyer was ineffective because he failed to argue that Counts 2 and 4, which charged firearm possession in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c), should have been charged as a single count.  As all of these arguments fail, the Court will **DISMISS** the claims in McNeill's Section 2255 motion.

### 1.   Ground 1: Confrontation Clause

McNeill's first ineffective assistance of counsel argument is based on the Confrontation Clause of the Sixth Amendment.  McNeill claims that his lawyer should have elicited testimony about "who had the drug[s] and how they were transfer[ed] from one agency to another in the chain of command."  ECF No. 1. McNeill further claims his lawyer should have called as a witness the officer who actually seized the evidence discovered at the Motel.  *Id.*  McNeill has not stated a claim for ineffective assistance of counsel.

The Confrontation Clause provides that "[i]n criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . . ."  U.S. Const. amend. VI.  The Confrontation Clause did not entitle McNeill to any specific testimony from the police.  *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009) ("[I]t is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence . . . .").  Nor did it require the Government to offer the testimony of any specific policeman.  *See id.* ("[The Confrontation Clause] does not require that "everyone who laid hands on the

---

[2]     To distinguish this initial motion from McNeill's other filings, the Court refers to it as the "Section 2255 motion."

evidence must be called.").  Because McNeill's Confrontation Clause rights were not violated, McNeill has not demonstrated deficient performance for *Strickland* purposes.

Even if McNeill could demonstrate constitutionally deficient performance, he has not demonstrated prejudice.  McNeill clearly takes issue with the extent to which the Government established the chain of custody.  But McNeill makes no showing that the evidence was improperly authenticated.  Nor does he make any showing that the outcome of the trial would have changed had his lawyer asked different questions about the chain of custody or had his lawyer examined different witnesses.  Accordingly, McNeill has not demonstrated prejudice under *Strickland*.[3]

## 2.   Ground 2: Evidentiary Stipulations[4]

McNeill's next ineffective assistance of counsel argument concerns evidentiary stipulations.  McNeill argues that the stipulations amounted to ineffective assistance of counsel in three ways:  First, the stipulations were *per se* violations of his Confrontation Clause rights.  Second, the stipulations were not confirmed by independent testing.  And third, the stipulations deprived McNeill of the opportunity to demonstrate evidence tampering.  McNeill's arguments do not set forth ineffective assistance of counsel under *Strickland*.

As an initial matter, McNeill is incorrect when he argues that stipulations constitute a *per se* violation of the Confrontation Clause.  *See id.* at 328 ("Defense attorneys and their clients will often stipulate to the nature of the substance in the

---

[3]      In a supplemental affidavit, ECF 25, McNeill moves to supplement the record with evidence that supports his ineffective assistance of counsel claim.  The Court will **GRANT** the motion to supplement, but it ultimately concludes that the additional evidence does not establish ineffective assistance of counsel.

The additional evidence at issue here concerns the evidentiary chain of custody. McNeill claims that the Government transferred some of the drug evidence from glassine envelopes into glass vials.  Because of this transfer, he claims, an evidence bag was stamped "Tampered."   As an initial matter, the word appears to be "Tamper," not "Tampered," and it appears to be preceeded by other words—possibly "Do Not."  In any event, just because evidence was transferred from one container to another does not mean that evidence was lost or corrupted.  There is not a reasonable probability that the outcome of the trial would have changed if McNeill's lawyer had argued that the evidence was tainted.  Accordingly, McNeill has not demonstrated prejudice under *Strickland*.  *See Giblin v. U.S.*, No. 9-1286, 2010 WL 3039992, at *6 (D.N.J. Aug. 3, 2010).

[4]      This section also covers Ground 5, which repeats Ground 2.

ordinary drug case.").

Next, McNeill is incorrect when he argues ineffectiveness based on his lawyer's failure to independently confirm all of the stipulated facts. The stipulated facts reflected forensic analyses performed by the Government. Though McNeill's lawyer ordered some independent forensic analyses, *see* ECF Nos. 24-9, 24-13, McNeill claims that his lawyer should have ordered additional tests. McNeill believes that those tests would have confirmed that the drug evidence contained cocaine. He also thinks independent testing would have revealed evidence of tampering on the part of the police or the Government.

Certainly, McNeill's lawyer could have taken additional steps to confirm the Government's forensic analyses of the evidence. But "*Strickland* does not impose an all-encompassing duty on counsel to investigate every fact." *Duronio v. U.S.*, No. 10-1574, 2012 WL 78201, at *7 (D.N.J. Jan. 10, 2012). To establish ineffective assistance of counsel, McNeill needs to demonstrate that his lawyer's strategic decision to stipulate to certain facts without independent confirmation fell below an "objective standard of reasonableness." *Rainey*, 603 F.3d at 197. McNeill has not satisfied this burden. *See Jones v. U.S.*, 2000 WL 987271, at *8 (S.D.N.Y. 2000) ("If counsel believed that an independent analysis was not necessary, and indeed there is no indication that the results were tainted or unreliable, then such decision [to enter into evidentiary stipulations] does not constitute ineffective assistance.").[5] Accordingly, McNeill has not demonstrated

---

[5]      In another supplemental affidavit, ECF No. 24, McNeill moves to supplement the record. The Court will **GRANT** the motion, but it ultimately concludes that the additional information does not establish ineffective assistance of counsel.

First, McNeill points to new information concerning stipulations he entered into at trial. Before trial, McNeill agreed that he would stipulate to certain facts. McNeill's lawyer provided him with copies of the stipulations, which McNeill signed. The stipulations admitted into evidence at trial differ slightly from the stipulations that McNeill signed. McNeill argues that his lawyer should not have allowed these stipulations—the stipulations without McNeill's initials—to be entered into evidence. As far as the Court can tell, the stipulations McNeill initialed and the stipulations admitted into evidence were substantially identical. *Compare* ECF No. 24-6 *with* ECF No. 24-7. There was no ineffective assistance of counsel here.

Second, McNeill argues that he told his lawyer that he could not agree to the stipulations "because [McNeill's lawyer] still hasn't done what I previously requested." But at trial McNeill acknowledged to Judge Bassler that he was voluntarily entering into the stipulations. Trial Transcript at 3:41-42.

Third, McNeill argues that his lawyer should have ordered an independent fingerprint analysis. McNeill believes that the analysis would have proven that Linden police officers had tampered with the evidence. But McNeill's belief amounts to little

that his lawyer's performance was constitutionally deficient for *Strickland* purposes.

Finally, McNeill argues that the stipulations were a tactical error because they did away with the need for his lawyer to cross examine the Government's chemist. McNeill believes that the chemist would have acknowledged the "possibility" that police officers planted drugs in the Ford Explorer. ECF No. 15. Even if the chemist had taken the stand and acknowledged this possibility, there is no reasonable probability that his testimony would have changed the outcome of the trial. Accordingly, McNeill has not demonstrated prejudice under *Strickland*.

### 3.    Ground 3: Multiplicitous Charges

"Multiplicity [is] the charging of a single offense in different counts of an indictment." *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978). Count 2, which concerned the gun seized at the Motel, charged firearm possession in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c). Count 4, which concerned the gun seized from the Ford Explorer, charged the same crime. McNeill argues that his lawyer was ineffective because he failed to argue that Counts 2 and 4 were multiplicitous.[6] McNeill is incorrect.

To determine whether two charges based on the same statute are multiplicitous, courts look to the statute's unit of prosecution. *See United States v. Pollen*, 978 F.2d 78, 85 (3d Cir. 1992). The unit of prosecution for a firearm possession in furtherance of drug trafficking charge under 18 U.S.C. § 924(c) is the underlying drug charge. *See U.S. v. Diaz*, 592 F.3d 467, 474 (3d Cir. 2010). If a defendant possesses "separate firearms in furtherance of" two drug trafficking offenses, the Government may charge two § 924(c) counts. *U.S. v. Kennedy*, 682 F.3d 244, 257 (3d Cir. 2010).

Here, Counts 1 and 3 charged McNeill with distinct drug crimes. Counts 1 and 3 charged distinct crimes because they required the Government to prove different facts. *See U.S. v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978) (drug offenses distinct where "the acts of possession and distribution involve[] discrete quantities of narcotics, and thus that the facts required to prove the two offenses differ"). Count 1 required the Government to prove possession with intent to distribute based on the drugs in McNeill's Motel room; Count 3 required the

---

more than speculation, and it cannot support a claim for ineffective assistance of counsel. *See U.S. v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989) (prejudice under *Strickland* not established by "mere speculation about what the witnesses . . . might have said").

[6]    McNeill's reply brief clarifies that Ground 3 is a claim for ineffective assistance of counsel.

Government to prove possession with intent to distribute based on the drugs in the Ford Explorer.  Just as the heroin possession charges were distinct, so too were the firearm possession charges distinct.  Count 2 was based on the firearm discovered in McNeill's motel room; Count 4 was based on the firearm discovered in the Ford Explorer.  Since Counts 2 and 4 charged the possession of separate firearms in furtherance of separate drug offenses, Counts 2 and 4 were not multiplicitous.[7]

### B.     MOTIONS TO AMEND

McNeill filed three motions to amend.  As the Government did not oppose the first motion to amend (though it contests the merits of the claims set forth in the first motion to amend), the Court will **GRANT** the motion.  The Government did not oppose the second motion to amend or contest the claims raised in the second motion to amend, but the Court will **DENY** the motion on futility grounds.  Finally, the Government did oppose the third motion to amend, arguing that it was an impermissible "second or successive" motion and that its claims fail on the merits.  The Court will **GRANT** the third motion to amend **IN PART**, and **DENY** the third motion to amend **IN PART**.

### 1.     First Motion to Amend (ECF No. 8)

McNeill's first motion to amend seeks to add four ineffective assistance of counsel claims to McNeill's original Section 2255 motion.  One claim, Ground 5, concerns evidentiary stipulations, and it was addressed in the previous section.  Two claims concern the suppression of evidence.  The final claim concerns grand jury prejudice.  As the Government consents to the motion, *see* ECF No. 10 at 1 n.1, I the Court will **GRANT** the first motion to amend.  *See* Fed. R. Civ. P.

---

[7]     In ECF No. 17 McNeill moves to supplement the record with the district court decision in *U.S. v. Kennedy*, No. 6-28, 2010 WL 5418931 (D.N.J. Dec. 23, 2010).  McNeill argues that the decision demonstrates that he was charged with multiplicitous counts.  The Court will **GRANT** the motion, but it will reject McNeill's ineffective assistance of counsel arguments on the merits.  *See U.S. v. Kennedy*, 682 F.3d 244 (3d Cir. 2012).

In ECF No. 34 McNeill moves to supplement the record with the Third Circuit's decision in *Kennedy*.  McNeill argues that the decision requires judges to clarify to jurors that each count charging a violation of 18 U.S.C. § 924(c) needs to be tied to a particular drug trafficking crime.  The Court will **GRANT** the motion to supplement, but it will reject McNeill's ineffective assistance of counsel arguments because Judge Bassler clarified that the counts charging violations of 18 U.S.C. § 924(c) were linked to separate drug offenses.  *See McNeill I*, ECF No. 46.

15(a)(2).  However, the Court will **DISMISS** all four claims on the merits.

### a.      Grounds 4 and 6: Suppression

This ineffective assistance of counsel argument concerns suppression of evidence.  Before trial, McNeill's lawyer moved to suppress evidence discovered in the Motel room.  The motion was denied.  McNeill now argues that his lawyer should have made different arguments for suppression.  McNeill also argues that his lawyer should have renewed the suppression motion after trial.  McNeill has not established ineffective assistance of counsel.

First, McNeill maintains that his lawyer should have argued for suppression based on the fact that the Second Search began before a physical copy of the warrant arrived at the crime scene.[8]  But a search conducted after a warrant has been issued is not illegal just because the warrant has not been delivered to the crime scene.  *See United States v. Brown*, 596 F. Supp. 2d 611, 626 (E.D.N.Y. 2009) (rejecting argument that "the search of Apartment 2A violated the constitution because Captain McGinn had not seen the search warrant and did not know all of the particulars at the time he ordered officers to search Apartment 2A"), *aff'd sub nom* 406 Fed. Appx. 500 (2d Cir. 2010); *cf. Maloney v. City of Reading*, No. 4-5318, 2006 WL 305440, at *3 (E.D. Pa. Feb. 8, 2006) ("An arrest is not unlawful simply because the arresting officer executes the arrest without a copy of the warrant in his or her possession.").  Furthermore, contrary to McNeill's representation, the evidence at trial demonstrated that the officers who executed the warrant were familiar with the warrant's contents.  *See* Trial Transcript at 2.68:23-25 ("Q: You went into the room and you didn't know what the Judge was authorizing you to search at that time, did you sir?  A: Yes, I did.").  McNeill's lawyer was not ineffective when he failed to make McNeill's meritless suppression arguments.

Second, based on discrepancies between testimony offered at the evidentiary hearing and testimony offered at trial, McNeill argues that his lawyer should have filed a renewed motion to suppress.  Here, McNeill's strongest argument is that Officer Tempalsky testified at the evidentiary hearing that the Initial Search took only one to two minutes, while Officer Evan testified at trial that he remained in the Motel room for 15-20 minutes after he entered to perform the Initial Search.  *Compare* Evidentiary Hearing Transcript at 70:4-5 *with* Trial Transcript at

---

[8]      McNeill contends that the Second Search occurred not only before the warrant was delivered to the scene but also before the warrant was issued.  Judge Bassler rejected the argument that the Second Search occurred before the warrant was issued, and his decision was affirmed on appeal.  *See McNeill*, 285 Fed. Appx. at 981 n.4.

1.145:24-25.  The Third Circuit considered this discrepancy, and it concluded that a renewed suppression motion would have failed.  *See McNeill*, 285 Fed. Appx. at 980 ("McNeill's claim that the pre-trial suppression ruling is undermined by potentially contradictory trial testimony fails . . . .").  In reaching this conclusion, the Third Circuit found that Judge Bassler's credibility findings at the evidentiary hearing were not clearly erroneous given the additional testimony at trial.  The Third Circuit explained: "Looking at Lieutenant Tempalsky's testimony alongside that of Officer Evan, it seems plausible that the actual search took only one or two minutes, but that the officers spent nearly 30 minutes in the immediate aftermath determining who would secure the room, apply for the search warrant, and handle the different aspects of the case."  *Id.* at 982.  This explanation is supported by the testimony of Lieutenant Tempalsky, who said he remained "there"—apparently in front of or inside McNeill's motel room—for roughly 30 minutes after the Initial Search.  Evidentiary Hearing Transcript at 70:24-25.

      To determine whether McNeill was prejudiced by his lawyer's failure to file a renewed suppression motion, the Court does not ask whether Judge Bassler's credibility findings were clearly erroneous.  Instead, it asks whether there is a reasonable probability that Judge Bassler would have changed his credibility determination based on the perceived discrepancies between the testimony offered at the evidentiary hearing and at trial.  The Court answers this question in the negative.  Judge Bassler concluded that the officers testified credibly about what was in plain view when they entered the room, and McNeill does not point to any trial testimony contradicting this finding.  Given what they observed in plain view, the officers on the scene did not need to conduct a lengthy search to make the observations they needed to secure a warrant.  Accordingly, there is not a reasonable probability that if Judge Bassler considered the issue, he would have granted a renewed motion to suppress based on perceived discrepancies between the testimony of Lieutenant Tempalsky and Officer Evan.  Accordingly, McNeill cannot demonstrate prejudice for *Strickland* purposes.[9]

---

[9]    In a supplemental filing, ECF No. 35, McNeill moves to supplement the record with additional information relating to the searches of the Motel room.  The Court will **GRANT** the motion to supplement.  But the Court finds that the new information provided in the motion to supplement does not establish ineffective assistance of counsel.

    In his supplemental filing, McNeill contends that the Second Search began before the warrant was issued.  He also suggests that trial testimony demonstrates that the officers who testified at the suppression hearing were not credible.

    First, McNeill suggests that trial testimony from Linden Chief of Police John Miliano demonstrates that the Second Search began *before* the search warrant was issued at 7:25 p.m.  In support of this argument, McNeill claims that Chief Miliano testified that the Second Search was conducted when Chief Miliano was present at the Swan Motel

### b.      Ground 7: Grand Jury Prejudice

The grand jury that returned the second superseding indictment was told,

---

from 7:00 p.m. to 7:30 p.m.  McNeill is misrepresenting the testimony: the Chief testified that he arrived at the Motel between 7:00 and 7:30, not that a search was being conducted between 7:00 p.m. and 7:30 p.m.  Trial Transcript at 3.74:11-12.

Second, McNeill suggests that a discrepancy in the testimony of Lieutenant Tempalsky and Detective Goncalves demonstrates that evidence was seized before a search warrant was issued.

After Lieutenant Tempalsky conducted the Initial Search, he left the Motel.  He further testified that when he was heading back to the Motel "around 7:30," he received a call from Detective Goncalves telling him the warrant had been granted.  *Id.* 1.190:12-14.  Lieutenant Tempalsky testified that he "didn't get back to the room until possibly after 7:30, around 7:30 that night."  *Id.* at 1.189:17-19; *see also id.* at 2.64:2-4 ("It was around 7:30 that I headed back [to the Motel].").  At one point in his testimony, Lieutenant Tempalsky said he searched the room "a little after 7:30."  *Id.* at 2.6:9-10.  At another point in his testimony, Lieutenant Tempalsky testified that the search began "around" 7:40 p.m. or 7:45 p.m, *id.* at 2.69:6-7, after Lieutenant Tempalsky took some pictures of the room.  *Id.* at 2.69:9-13.  Lieutenant Tempalsky testified that Detective Goncalves arrived "I guess . . . around 8, 8:30" with a physical copy of the search warrant.  *Id.* at 2.68:9-15.

Detective Goncalves testified that after he left Judge Triarsi's home, where Judge Triarsi issued the warrant, Detective Goncalves called Lieutenant Tempalsky and told him the warrant had been issued, that the search could begin, and that Detective Goncalves would not return to the Motel "for awhile."  *Id.* at 3.14:2-4.  Judge Triarsi signed the search warrant at 7:25, but Detective Goncalves indicated in a report that the "process before [Judge Triarsi] ended about 7:23.  *Id.* at 3.31.  Detective Goncalves testified that he arrived back at the Motel "approximately" ten minutes after he the warrant was signed.  *Id.* at 3.32:25.  He testified that when he returned to the Motel, officers were "picking up items [and] placing them aside."  *Id.* at 3.33:22-24.

There is not necessarily any inconsistency between the testimony of Lieutenant Tempalsky and Detective Goncalves.  Detective Goncalves's testimony that the Second Search had begun when he arrived back at the Motel at "approximately" 7:35 is not necessarily inconsistent with Lieutenant Tempalsky's testimony that he searched the room "a little after 7:30" and his other testimony that the search began "around" 7:40 p.m. or 7:45 p.m.  It is true that Lieutenant Tempalsky's testimony that Detective Goncalves arrived "I guess . . . around 8, 8:30" differs from Detective Goncalves's testimony that Detective Goncalves arrived "around" 7:35 p.m.  But ultimately there is not a "reasonable probability" the alleged discrepancy would have led Judge Bassler to reverse his credibility determinations and suppress the evidence discovered in McNeill's motel room.  Accordingly, McNeill has failed to demonstrate prejudice for *Strickland* purposes.

incorrectly, that McNeill had a prior felony conviction.  McNeill contends that the incorrect information tainted the grand jury's decision to indict on the heroin possession and firearm possession charges.  McNeill argues that his lawyer was ineffective in failing to seek dismissal of the second superseding indictment based on alleged taint.

In *U.S. v. Mechanik*, the Supreme Court held that errors in a grand jury proceeding were "harmless beyond a reasonable doubt" where the Defendants were convicted by a petit jury.  475 U.S. 66, 70 (1986); *U.S. v. Console*, 13 F.3d 641, 672 (3d Cir. 1993).  McNeill was convicted by a petit jury.  Therefore, to the degree the grand jury was tainted, the alleged taint was harmless beyond a reasonable doubt.  Accordingly, McNeill cannot demonstrate prejudice for *Strickland* purposes.[10]

## 2.    Second Motion to Amend (ECF No. 11)

The Government did not oppose McNeill's second motion to amend.  The second motion to amend raises six new claims.  Four of them sound in ineffective assistance of counsel, and two others concern supposed errors in sentencing.  Because none of McNeill's claims have merit, the Court will **DENY** the second motion to amend on futility grounds.  *See Hill*, 411 F.3d at 134.

### a.    Ineffective Assistance of Counsel

In his second motion to amend, McNeil identifies four instances of what he considers to be ineffective assistance of counsel:  First, his lawyer failed to argue that Counts 1 and 2, which charged heroin possession and firearm possession based on materials recovered at the Motel, were multiplicative of Counts 3 and 4, which

---

[10]    McNeill also suggests that he was prejudiced because the petit jury knew about the felon in possession charges when it convicted McNeill on Counts 1-4.  Even if McNeill is correct that the petit jury was prejudiced, McNeill has not demonstrated prejudice for *Strickland* purposes.

The Supreme Court has stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).  As Judge Bassler noted, the evidence supporting convictions on Counts 1-4 was "overwhelming."  *McNeill I*, ECF No. 50 at 13.  Assuming that the Phase One jury came to know about the felon in possession charges, any prejudice was harmless beyond a reasonable doubt when it came to Counts 1-4.  *See U.S. v. Denardi*, 892 F.2d 269, 270 (3d Cir. 1989) (possible Fifth Amendment violation harmless beyond a reasonable doubt where conviction supported by "overwhelming evidence").

charged the same crimes based on evidence recovered from the Ford Explorer. Second, his lawyer failed to argue that McNeill was not subject to the five-year mandatory minimum sentence imposed by 18 U.S.C. § 924(c). Third, his lawyer failed to argue that the superseding indictment violated the Speedy Trial Act. And fourth, his lawyer failed to argue that the search warrant was invalid under *Franks v. Delaware*, 438 U.S. 154 (1978). These arguments lack merit.

### i.    Ground 8: Multiplicity of Drug and Gun Counts

McNeill thinks his lawyer should have argued that Counts 1 and 2, which charged heroin possession and firearm possession based on the evidence recovered from the Motel, were multiplicative of Counts 3 and 4, which charged the same crimes based on evidence recovered from the Ford Explorer. As noted in Section III.A.2, McNeill was charged with two distinct drug offenses and two distinct firearm offenses. Accordingly, his multiplicity argument is meritless, and he has not demonstrated ineffective assistance of counsel.

### ii.    Grounds 10 and 11: Mandatory Minimum Sentence

Next, McNeill maintains that his lawyer should have argued that McNeill was not subject to a five-year consecutive mandatory minimum sentence on Count 2. McNeill is incorrect.

Count 2 charged McNeill with firearm possession in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Section 924(c)(1)(A)(i) provides:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law . . . [anyone who possesses a firearm in furtherance of drug trafficking] . . . shall, in addition to the punishment provided for such . . . drug trafficking crime, be sentenced to a term of imprisonment of not less than 5 years.

McNeill interprets this to mean that a conviction under Section 924(c) is subject to five-year consecutive mandatory minimum sentence <u>only</u> if a defendant is not convicted of another crime that carries a greater mandatory minimum sentence.

McNeill was convicted on two counts of violating Section 924(c). His conviction on the first count, Count 2, carried a five-year consecutive mandatory minimum sentence. His conviction on the second count, Count 4, carried a

mandatory minimum sentence of 25 years.  Accordingly, McNeill argues that the conviction on Count 4—the conviction with a "greater mandatory minimum sentence"—meant that McNeill was not subject to a five-year consecutive mandatory minimum sentence on Count 2.

In *Abbott v. United States*, the Supreme Court held that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction."  131 S.Ct. 18, 23 (2010); *see also U.S. v. Robles*, 709 F.3d 98, 100 (2d Cir. 2013).  Accordingly, the argument underlying McNeill's ineffective assistance of counsel claim is meritless, and his lawyer should not have made it.  McNeill has not demonstrated constitutionally deficient performance for *Strickland* purposes.

### iii.    Ground 12: Speedy Trial Act

McNeill contends that that his lawyer should have moved to dismiss Count 2 under the "gilding exception" to Speedy Trial Act.  Because the law in this circuit regarding the gilding exception is unsettled, McNeill cannot state a claim for ineffective assistance of counsel.

Typically, "when the government fails to indict a defendant within 30 days of arrest, [the Speedy Trial Act] requires dismissal of only the offense or offenses charged in the original complaint."  *U.S. v. Watkins*, 339 F.3d 167, 179 (3d Cir. 2003) (quoting *U.S. v. Pollock*, 726 F.2d 1456, 1462 (9th Cir. 1984)).  But an exception to this rule called the "gilding exception" allows courts to dismiss certain "gilded" charges that were not charged in the original complaint.  *See United States v. Giwa*, 831 F.2d 538 (5th Cir. 1987).  While the Third Circuit has considered whether there is a gilding exception to the Speedy Trial Act, it has explicitly declined to rule on the issue.  *See U.S. v. Watkins*, 339 F.3d 167, 175-78 (3d Cir. 2003).

McNeill's lawyer was not ineffective because he failed to make a gilding exception argument.  For *Strickland* purposes, a lawyer's performance is reviewed based on the circumstances at the time of his conduct.  *See Strickland*, 466 U.S. at 689.  The status of the gilding exception was unsettled in the Third Circuit before and during McNeill's trial, and it remains unsettled today.  McNeill's lawyer did not perform in a constitutionally deficient manner when he did not argue for dismissal based on unsettled law.  *See Johnson v. Carroll*, 327 F. Supp. 2d 386, 398 (D. Del. 2004) ("Given the unsettled nature of this issue at the time of Petitioner's trial, the Court concludes that trial counsel's failure to object to the drug courier profile testimony was not deficient performance.").

iv.     Ground 13: *Franks* Violation

Finally, McNeill contends that his lawyer should have challenged the search warrant under *Franks v. Delaware*, 438 U.S. 154 (1978).  The Court disagrees.

In *Franks*, the Supreme Court held that "when an affidavit contains intentionally or recklessly false statements upon which a search warrant's probable cause is based, the warrant must be voided as if probable cause had been lacking on the face of the affidavit."  *U.S. v. Stabile*, No. 8-145, 2009 WL 8641715, at *7 (D.N.J. Jan. 21, 2009).  McNeill does not identify the allegedly false or reckless statements he is referring to.  It appears that his *Franks* argument is just another way of challenging the credibility determinations underlying Judge Bassler's suppression decision.  This Court has already addressed this issue in Grounds 4 and 6, and it found that McNeill has failed to establish ineffective assistance of counsel.

b.     Additional Arguments

i.     Ground 9: Sentencing

McNeill argues that (1) Judge Bassler failed to give reasons for the sentence he imposed; and (2) Judge Bassler failed to address the sentencing factors set forth in 18 U.S.C. §3353(a).  Because McNeill failed to raise these arguments on direct appeal, he is barred from raising them now unless he establishes either "cause" and prejudice or actual innocence.  McNeill maintains that he has established actual innocence.  He has not.  *See Schlup*, 513 U.S. at 327-28.  McNeill himself recognizes that "the evidence found at the Hotel was so overwhelming that a guilty verdict was apparent."  ECF No. 26-2 at 15.

McNeill also suggests that ineffective assistance of counsel provides the "cause" justifying his failure to raise these arguments earlier.  But McNeill has not demonstrated ineffective assistance of counsel.  The sentence imposed by Judge Bassler exceeded the mandatory minimum by one month. McNeill makes no showing that he would have received a lower sentence had his lawyer performed differently.  Accordingly, McNeill has not demonstrated prejudice under *Strickland*.

3.     **Third Motion to Amend (ECF No. 26)**

McNeill's third motion to amend, filed on April 13, 2012, seeks to add three ineffective assistance of counsel claims to McNeill's Section 2255 motion.  All of the claims concern plea bargaining.  ECF No. 26.  The Government opposes the

third motion to amend, arguing that it is an impermissible "second or successive" habeas motion and that it fails on the merits.[11]  The Court finds that one of the claims set forth in the third motion to amend lacks merit, and that the remaining two claims warrant an evidentiary hearing.  Accordingly, the Court will **GRANT** the third motion to amend **IN PART,** and **DENY** the third motion to amend **IN PART**.

        a.    McNeill's Ineffective Assistance of Counsel Arguments

Construed liberally, McNeill's third motion to amend seeks to add three ineffective assistance of counsel claims to McNeill's Section 2255 motion.  The Court refers to the claims, respectively, as the Counter-Offer Argument, the Failure to Inform Argument, and the Sentencing Exposure Argument.

The Counter-Offer Argument.  First, McNeill contends that his lawyer was ineffective in failing to ask the Government for a particular plea deal.  On July 1, 2004, the Government offered McNeill a deal that would allow him to plead guilty to one count of heroin possession with intent to distribute and one count of being a felon in possession.  McNeill refused the offer.  He claims that he told his lawyer that he did not have a prior felony conviction and did not want to be labeled as a prior felon.  Accordingly, McNeill claims that he instructed his lawyer to ask the Government to consider a revised plea offer that would only have McNeill plead to the heroin possession with intent to distribute count.  McNeill maintains that the Government would have had every reason to make this revised plea offer given that the felon in possession count would not affect McNeill's sentence.  McNeill claims that his lawyer never relayed his counter-offer to the Government.

The Failure to Inform Argument.[12]  Next, McNeill contends his lawyer was ineffective for not telling him about a plea offer.  On September 22, 2005, the Grand Jury returned a superseding indictment charging McNeill with one count of heroin possession with intent to distribute, one count of firearm possession in furtherance of drug trafficking, and one count of being a felon in possession of a firearm.  On December 22, 2005, the Government sent McNeill's lawyer a letter

---

[11]  At one point, the Government also argued that the third motion to amend was untimely under 28 U.S.C. § 2255(f).  However, the Government subsequently withdrew its statute of limitations defense.  ECF No. 37.
[12]  The Government did not address the Failure to Inform argument, which McNeill made in a reply brief.

threatening to seek a second superseding indictment unless McNeill pled to the superseding indictment.  The threatened second superseding indictment would include a second count of firearm possession in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c).  This second firearm possession count was based on the gun recovered from the Ford Explorer.  The December 22, 2005 letter said that the additional 18 U.S.C. § 924(c) count would increase McNeill's minimum exposure, if he was convicted on all counts, from "approximately 180" months to "approximate[ly] . . . 480 months."  ECF 30-1 at 34-35.  McNeill claims that he only learned about the December 22, 2005 Offer when the Government referenced it in an opposition brief filed on June 4, 2012.  ECF No. 30 at 4.  McNeill maintains that his lawyer's failure to show him the December 22, 2005 Letter "prejudiced" his "decision to proceed to trial."  *Id.*

    The Sentencing Exposure Argument.  Finally, McNeill argues that his lawyer was ineffective when he counseled McNeill to reject a 15 year plea deal based on incorrect information about McNeill's sentencing exposure at trial.  On March 20, 2006, after the six-count second superseding indictment had been filed, the Government offered McNeill a deal that would allow him to plead to one count of heroin possession with intent to distribute and one count of firearm possession in furtherance of drug trafficking.  The two counts would carry a 15 year minimum sentence.  McNeill's lawyer recommended that McNeill take his chances at trial since, McNeill's lawyer said, McNeill would face the same 15 year exposure if he was convicted on all six counts.  ECF No. 26-2 at 15 ("McNeill's rationale for going to trial was premised on [his lawyer's] advice, that regardless whether he takes the plea of 15 years or not (Plea Agreement of March 20, 2006) he will still receive the same time if he tried the case before a jury.").  This advice appears to have been based on the view that McNeill's two heroin possession charges and his two firearm possession charges would merge.  *See* ECF No. 26-2 ¶ 19 (counsel advised McNeill that "both of the Section 924(c) gun counts are the same as well as the drug count because they all derived from the June 3, 2004 event").  McNeill was ultimately sentenced to roughly 40 years.

i.    The Counter-Offer Argument

    The Counter-Offer Argument fails on the merits.  The Supreme Court has recognized that there is no constitutional right to a plea bargain.  *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).  While some cases have found ineffective assistance of counsel based on a failure to plea bargain, the cases are distinguishable from the facts of this case.  *See, e.g.*, *U.S. v. Pender*, No. 12-6806, 2013 WL 1137452, at *1 (4th Cir. 2013) (ineffective assistance of counsel where

lawyer did not plea bargain though the evidence against his client was strong and his client faced a life sentence); *Hawkman v. Parratt*, 661 F.2d 1161, 1171 (8th Cir. 1981) (ineffective assistance of counsel where lawyer failed to conduct plea negotiations but nevertheless advised his client to plead to charges that were "patently duplicitous").  The Counter-Offer Argument fails to state a claim for ineffective assistance of counsel.

ii.   The Sentencing Exposure Argument

The Sentencing Exposure Argument appears to have merit.  Accordingly, the Court will order an evidentiary hearing.

The Sentencing Exposure Argument is that McNeill's lawyer advised McNeill to turn down a 15 year deal based on the mistaken view that McNeill's two heroin possession charges and two firearm possession charges would merge, and that McNeill would face 15 years at trial.  *See* ECF No. 26-2 ¶ 19 (counsel advised McNeill that "both of the Section 924(c) gun counts are the same as well as the drug count because they all derived from the June 3, 2004 event").  In fact, the heroin possession and firearm possession charges did not merge, and McNeill was facing a mandatory minimum of 40 years at trial.  McNeill maintains that he never would have gone to trial if he knew he was facing 40 years.

"[A] trial attorney's error with respect to his ignorance of the sentencing law has satisfied the first prong of the *Strickland* test."  *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).  Where a lawyer's deficient performance leads a client to reject a plea offer, the client can establish prejudice for ineffective assistance of counsel purpose if he can establish three things with reasonable probability.  First, he "must show that but for the ineffective advice of counsel . . . the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)."  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012).  Second, he must show that the court would have accepted the plea bargain.  *Id.*  And third, he must show that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."  *Id.*

First, McNeill's lawyer performed deficiently when he advised McNeill that he was facing 15 years at trial, even though the sentencing law indicated that McNeill would receive a mandatory minimum of 40 years.  *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer . . . Knowledge of the

22

comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.").[13]

Second, McNeill's lawyer's conduct appears to have been prejudicial. McNeill maintains that he would have taken the 15 year deal if his lawyer had informed him that he was facing 40 years.  Given the disparity between 15 years and 40 year, and given McNeill's statement that he would have opted for the 15 year sentence, McNeill has sufficiently alleged prejudice at this stage of the case. *See Day*, 969 F.2d at 45; *U.S. v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998); *see also Boyd v. Waymart*, 579 F.3d 330, 357 (3d Cir. 2009) (en banc) (Sloviter, J., dissenting, concurring in the judgment of the court) ("In this case, as in *Day*, Boyd's failure to accept the proffered guilty plea led to a sentence substantially higher than offered, i.e., a sentence of 84-240 months imprisonment compared to the offered 48-96 (or 48-120) months imprisonment. Such a finding is sufficient under our precedent, [and] *Gordon* . . . to demonstrate prejudice.").

Third, there is reason to believe that if McNeill had agreed to a 15 year deal, Judge Bassler would have accepted it.  *See* Sentencing Transcript at 4:14-17, *McNeill I* (The COURT: "[Forty years] is not a sentence that I would impose but . . . I don't see where there is any discretion on my part.").

Fourth, it is clear that McNeill would have received a lesser sentence if he accepted the March 20, 2006 offer.  The Court will convene a hearing to evaluate the ineffective assistance of counsel claim based on the Sentencing Exposure Argument.

### c.    The Failure To Inform Argument

The Failure to Inform Argument appears to have merit.  Accordingly, the Court will order an evidentiary hearing.

A defense lawyer performs in a constitutionally deficient manner when he allows a plea offer to expire "without advising the defendant or allowing him to consider it."  *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012); *see also United States v. Barber*, 808 F. Supp. 361, 378 (D.N.J. 1992).  A client who never sees a plea offer can establish prejudice for ineffective assistance of counsel purposes if he can "demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel," and if he can

---

[13]    The Government suggests that there was no ineffective assistance of counsel if McNeill's lawyer's erroneous advice about sentencing exposure was based on an "erroneous strategic prediction" about how the jury would view the evidence, as opposed to an erroneous legal determination about merger.  ECF 30 at 18 n. 10.  The Court will explore this point during the evidentiary hearing.

"demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it . . . ."  *Id.* at 1410.

The Failure to Inform Argument is closely related to the Sentencing Exposure Argument.  In the Sentencing Exposure Argument, McNeill maintains that he turned down the March 20, 2006 Plea Offer—a 15 year deal—because he was told that he was facing 15 years at trial.  McNeill claims that he would have accepted the March 20, 2006 Offer if he knew he was actually facing a minimum of 40 years if he was convicted on all counts.  The Failure to Inform Argument is similar in that it states that McNeill would have taken a 15 year deal if he had seen the December 22, 2005 Letter threatening an exposure of 40 years.

The Failure to Inform Argument alleges deficient performance because it alleges a failure to communicate a plea offer.  It sets forth prejudice for the same reasons the Sentencing Exposure Argument sets forth prejudice.  The Court will hold an evidentiary hearing to determine whether McNeill can establish ineffective assistance of counsel based on the Failure to Inform Argument.

### d.   Amendment

As the Sentencing Exposure Argument and the Failure to Inform Arguments appear to state a claim for ineffective assistance of counsel, McNeill should be allowed to amend his Section 2255 motion under the liberal standard in Federal Rule of Civil Procedure 15.  *See* Fed. R. Civ. P. 15(a)(2).  Clearly, McNeill waited a long time to bring his third motion to amend.  But part of that delay can be attributed to McNeill's ignorance of the December 22, 2005 Letter.  In any event, since there has been no discovery and no hearing in this case, the Government is not prejudiced by McNeill's admittedly late-filed amendments.  *See Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991) ("Unless the opposing party will be prejudiced, leave to amend should generally be allowed."); *see also Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) ("Delay alone . . . is an insufficient ground upon which to deny a motion to amend.").  The Court will permit McNeill to amend his Section 2255 motion with ineffective assistance of counsel claims based on the Sentencing Exposure Argument and the Failure to Inform Argument.  The Court will not permit McNeill to amend his Section 2255 motion with the ineffective assistance of counsel claim based on the Counter-Offer Argument, as that amendment would be futile.

### C.   REQUESTS FOR *PRO BONO* COUNSEL (ECF Nos. 16, 27)

As a hearing is in order, the Court will **GRANT** McNeill's first request for *pro bono* counsel, ECF No. 16, and **DENY** his second request for *pro bono*

counsel, ECF No. 27, as moot.

### D.     MOTIONS FOR DISCOVERY (ECF Nos. 20, 22)

The Court will **DENY** McNeill's motions for discovery **WITHOUT PREJUDICE**.  Once counsel has been appointed, McNeill may, if he chooses, file a renewed motion for discovery.

## IV.    CONCLUSION

For the reasons stated above, the Court rules as follows:

- McNeill's motions to supplement (ECF Nos. 17, 24, 25, 34, 35, 36) are **GRANTED**.
- The claims set forth in McNeill's Section 2255 motion (ECF No. 1) are **DISMISSED**.
- McNeill's first motion to amend (ECF No. 8) is **GRANTED**, and the claims set forth in McNeill's first motion to amend are **DISMISSED**.
- McNeill's second motion to amend (ECF No. 11) is **DENIED**.
- McNeill's third motion to amend (ECF No. 26) is **GRANTED IN PART**, and **DENIED IN PART**.  The Counter-Offer Argument claim is **DISMISSED**.  The Sentencing Exposure Argument claim and the Failure to Inform claim survive.
- McNeill's first request for *pro bono* counsel (ECF No. 16) is **GRANTED**, and McNeill's second request for *pro bono* counsel (ECF No. 27) is **DENIED** as moot.
- McNeill's motions for discovery (ECF Nos. 20, 22) are **DENIED WITHOUT PREJUDICE**.

Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court will hold an evidentiary hearing on the surviving claims.  An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 8, 2013**