<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORRIE MCNEILL, | Civil Action No. 09-5983 (WJM) |
| Petitioner, | |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**APPEARANCES**:

> JEROME A. BALLAROTTO, Esq.
> 143 Whitehorse Avenue
> Trenton, NJ 08610
> Attorney for Petitioner
>
> SHIRLEY UCHENNA EMEHELU, Assistant U.S. Attorney
> PAUL J. FISHMAN, United States Attorney
> 970 Broad Street
> Newark, NJ 07101
> Attorneys for United States

**<u>MARTINI, District Judge</u>**:

Orrie McNeill, a federal prisoner who is detained at FCI Fairton, filed an amended motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct a 481-month sentence imposed by the Honorable William G. Bassler on August 8, 2006, in *United States v. McNeill,* Crim. No. 04-0514 (WGB) judgment (D.N.J. Aug. 8, 2006), *aff'd,* 285 F.App'x 975 (3d Cir. 2008), after a jury found him guilty of drug and other charges.   In an Opinion and Order filed on August 8, 2013, this Court, *inter alia,* dismissed all grounds for § 2255 relief, except two grounds asserting the ineffective assistance of counsel during plea negotiations, ordered an evidentiary hearing on those claims, and appointed counsel to represent McNeill.   (ECF Nos. 38, 39.)   McNeill filed a motion for

reconsideration of the Court's dismissal of the "counter-offer argument," arguing that that this Court misconstrued his "poorly articulated" pro se claim of ineffective assistance of counsel during plea negotiations involving the July 1, 2004, and May 12, 2005, plea offers. (ECF No. 45.) The United States filed a letter brief opposing McNeill's motion to vacate the dismissal of the "counter-offer argument," and McNeill filed a reply. (ECF Nos. 46, 47.) On March 7, 2014, this Court granted McNeill's motion for reconsideration, found that he established a *prima facie* ineffective assistance of counsel during plea negotiations claim concerning plea counsel's failure to discern that McNeill could not provide a factual basis for a guilty plea to possession of a firearm by a convicted felon due to the fact that McNeill had no prior felony conviction, vacated the portion of the August 8, 2013, Order dismissing the "counter-offer argument," and ordered that the merits of this claim be considered at the evidentiary hearing.

The evidentiary hearing occurred on March 12 and April 1, 2014. Mr. McNeill testified on his own behalf. The United States called two witnesses: (1) Robert J. DeGroot, McNeill's defense attorney, and (2) Richard Childs, a private investigator who accompanied DeGroot to one visit in 2005 to McNeill at the Passaic County Jail. The parties thereafter filed closing briefs. After reviewing the transcripts and the argument of counsel, this Court will deny relief on McNeill's three claims concerning the ineffective assistance of counsel during plea negotiations because McNeill has not shown, with respect to any of his claims, that counsel's performance was deficient and that there is a reasonable probability that, but for this deficient performance, the outcome of the plea process would have been different. *See Lafler v. Cooper,* ___ U.S. ___, 132 S.Ct. 1376, 1384 (2012); *Hill v. Lockhart,* 474 U.S. 52 (1985).

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

Under 28 U.S.C. § 2255, a federal court may vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."   28 U.S.C. § 2255(a).   Relief is available under § 2255 only when "the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and . . . 'present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'"   *United States v. Travillion,* ___ F.3d ___, 2014 WL 3029837 *2 (3d Cir. July 7, 2014).

The evidentiary hearing in this case involved three Sixth Amendment claims of ineffective assistance of counsel during plea bargaining.   First, McNeill claims that counsel was deficient in failing to discern, when he received the July 1, 2004, and May 12, 2005, plea offers, that McNeill could not accept these offers because he was unable to provide a factual basis for a guilty plea to possession of a firearm by a convicted felon, as he had no prior felony conviction   ("the counter-offer argument").   Second, he claims that counsel was deficient in failing to inform him about a 15-year plea offer the government made in a letter dated December 22, 2005 ("the failure to inform argument").   Third, McNeill asserts that counsel was deficient in communicating a 15-year plea offer made on March 20, 2006, because counsel did not tell McNeill that that he faced a maximum sentence of 40 years in prison if he rejected the 15-year offer ("the sentencing exposure argument").

To establish ineffective assistance of counsel in the plea negotiation context, McNeill must show: (1) counsel's advice regarding the plea offer was not "'within the range of competence demanded of attorneys in criminal cases,'" *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)), and (2) "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S.Ct. at 1385. "Regarding the interplay between *Strickland* and § 2255, if [McNeill] shows both elements of *Strickland,* he satisfies the requirements of § 2255." *Travillion* at *3.

A. Counter-Offer Argument:   Failure to Discern That McNeill Was Not a Convicted Felon

In his first claim of constitutionally ineffective assistance of counsel during plea negotiations, McNeill claims that (1) counsel was constitutionally deficient in failing to discern, when he evaluated the plea offers of July 1, 2004, and May 12, 2005, that McNeill could not accept the pleas because he could not provide a factual basis for a guilty plea to possession of a firearm by a convicted felon (since his only prior conviction was for a disorderly persons offense), and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the July 1, 2004, or May 12, 2005, plea process would have been different, in that McNeill would have accepted the offer and Judge Bassler would have imposed a 120-month term of imprisonment.

With regard to deficient performance, defense counsel DeGroot candidly admitted that he did not realize that McNeill could not have pled guilty to possession of a firearm by a convicted

4

felon because McNeill's sole prior conviction was a disorderly persons offense, and he did not identify this until after McNeill was convicted and the probation officer was preparing the Presentence Report.   Although the government concedes in its brief that defense counsel did not know that McNeill was not a convicted felon at the time he evaluated the plea offers dated July 1, 2004, and May 12, 2005, the government argues that this error was not constitutionally deficient performance, but was "a mutual mistake of attorney DeGroot and the prosecution."   (ECF No. 54 at 33.)   This Court agrees with McNeill that counsel's failure to recognize that McNeill was not a convicted felon, and his consequent failure to discern that McNeill could not provide a factual basis for a guilty plea to possession of a firearm by a convicted felon, constituted constitutionally deficient performance, which was "not within the range of competence demanded of attorneys in criminal cases."   *Hill,* 474 U.S. at 56 (quoting *McMann,* 397 U.S. at 771).

However, to prevail on this ineffective assistance of counsel claim, McNeill must also show that he was prejudiced by the deficient performance.   As explained above, to establish prejudice where the defendant rejected a plea offer, he must show that, "but for the ineffective advice of counsel there is a reasonable probability that . . . [he] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances[], that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S.Ct. at 1385.   To show prejudice on this claim, McNeill would have to at least show that there is a reasonable probability that DeGroot would have notified the United States that McNeill could not plead guilty to the felon in possession charge, there is a reasonable probability that the government would have revised the plea offer to eliminate the guilty plea to possession of

5

a firearm by a convicted felon (since a guilty plea to one count of possession of heroin with intent to distribute would have resulted in same 120-month sentence as a plea to both charges), there is a reasonable probability that McNeill would have accepted the revised offer to plead guilty to one count of possession of heroin with intent to distribute, and there is a reasonable probability that Judge Bassler would have accepted the negotiated plea and imposed a 120-month term of imprisonment, rather than the 481-month sentence that was actually imposed after trial and conviction on a superseding indictment.  *See Lafler*, 132 S.Ct. at 1385.

McNeill's impediment to succeeding on this claim is that, after considering the testimony of McNeill and DeGroot, this Court finds that McNeill has not shown that there is a reasonable probability that, but for counsel's error regarding the nonexistent felony conviction, McNeill would have accepted a revised 10-year plea offer.   On this point, McNeill argues in his brief that counsel's failure to recognize that McNeill was not a convicted felon "severely prejudiced Orrie McNeill because every plea offer the Government extended, except the final offer on March 20, 2006, required Orrie McNeill to plead to a violation of 18 USC Section 922(g)," and "[t]here is no doubt that [counsel's] failure to determine Orrie McNeill's status cost Orrie McNeill the ability to negotiate a favorable plea that would have resulted in a sentence substantially below the sentence he received as a result of going to trial."   (ECF No. 51 at 17, 18.)   The government argues in its brief that McNeill has not shown that there is a reasonable probability that he would have accepted the plea offer because the evidence demonstrates that McNeill "had no interest in accepting any of the plea offers, whether they required him to plead guilty to being a previously convicted felon or not," as McNeill was "singularly focused on:   (1) prevailing on his motion to suppress; and then, after he lost [the] suppression motion, on (2) acquittal at trial."   (ECF No. 54 at 35.)   McNeill

6

counters that he "was unfairly prejudiced in the plea negotiations process by the failure of trial counsel to recognize that Orrie McNeill was not a convicted felon," and that "[i]t is impossible to believe that the Government would not have accepted his offer to plead guilty to the 841 violation or even the 841 and the 924(c) violation without the 922(g) violation because under all circumstances it had absolutely no impact on his final sentence."   (ECF No. 51 at 17.)   However, even if the government would have allowed McNeill to plead guilty to the 841 violation without the plea to the 922(g) charge, McNeill must still show that there is a reasonable probability that he would have accepted such a plea offer, absent counsel's error.   The claim fails because this Court finds that he has not made this showing.

As to the July 1, 2004, plea offer, McNeill testified on direct examination that counsel explained the July 1, 2004, plea offer to him at the Passaic County Jail, and that the offer involved pleading guilty to an 841 narcotics charge and a 922(g) felon in possession of a firearm charge in exchange for a 10-year sentence (the mandatory minimum on the 841 charge).   (ECF No. 53 at 25-29.)   McNeill testified that he told counsel:   "I told him I wanted to take it, but I'm not admitting that I'm a convicted felon, I'm not pleading to the plea bargain based on a convicted felon, the 922(g), the second count."   (ECF No. 53 at 28.)   He testified that counsel responded that he was going to look into it, to wait for the discovery, and to figure out the charge after receiving discovery.   *Id.*   McNeill testified that counsel later gave him the discovery, which included his state conviction on a disorderly persons offense; McNeill testified that he asked DeGroot if he had looked at the judgment of conviction to find out what's going on with that, "as far as me copping out without trying this case," and counsel told him to wait until the motion to suppress played out.   *Id.* at 31.

7

McNeill also testified concerning the plea offer contained in the government's May 12, 2005, letter, which again involved pleading guilty to the 841 charge and the 922(g) charge in exchange for a 10-year sentence.  (ECF No. 53 at 32-35.)  McNeill testified that he told counsel that he was "willing to take the plea but, you know, I'm not admitting to the convicted felon."  *Id.* at 34.  McNeill testified that he told counsel "to inform the Government that I'm not a convicted felon, that I'll take the plea but I'm not going to admit to the convicted felon."  *Id.*  He testified that he showed counsel the state judgment of conviction and counsel responded that he would look into it, he would "relate your concerns to the Government," and to let counsel "take care of this," but he "never heard" anything else from counsel.  *Id.* at 34-35.

The United States called Robert DeGroot, McNeill's defense attorney, who had a different recollection of these events.  (ECF No. 52 at 13-35 ).  Counsel testified that he "probably told" McNeill not to accept the July 1, 2004, plea offer because he had been receiving discovery in the case and "it was too early in the case to make that decision," as there appeared to be Fourth Amendment issues which "would give rise to a good basis to have a motion to suppress."  (ECF No. 52 at 18, 19.)  DeGroot testified that McNeill rejected the May 12, 2005, plea offer, and in response to the question as to whether McNeill provided a rationale for his rejection of the offer, DeGroot testified that "[i]t was expressed to me that, you know, he felt that the search was defective and ultimately he would be borne out with that, you know, attitude."  *Id.* at 33.  In response to the question of whether DeGroot made any plea counteroffers, he testified that his client did not authorize him to make any counteroffers.  *Id.* at 33-35.  At the end of his direct testimony, counsel stated that that he initially thought that the case should be tried, but "later on I felt that the risk to this young man was much too great."  *Id.* at 72.  In response to the question

8

as to whether he advised McNeill of this risk prior to going to trial, counsel responded "You know, numerous times . . .   I happened to like the young man, and I thought, you know, he had a little too much testosterone than brains, you know?"   *Id.* at 73.

On cross-examination by McNeill's attorney, DeGroot acknowledged that he had filed a post-trial motion in which he argued that McNeill was unfairly prejudiced in plea negotiations because counsel failed to timely identify that he was not a convicted felon.   (ECF No. 52 at 76.) Counsel also acknowledged that it was impossible for McNeill to accept the July 1, 2004, and May 12, 2005, plea offers because they both required him to plead guilty to a crime which, by law, he could not plead guilty to because he could not provide a factual basis for the 922(g) charge.   *Id.* at 82-85.

As to the July 1, 2004, plea offer, McNeill and DeGroot both testified that DeGroot advised McNeill not to accept the plea before discovery was completed.   Although McNeill (unlike DeGroot) testified that he told DeGroot that he wanted to take the July 1, 2004, plea offer, but he could not accept it as it stood because he was not a convicted felon,[1] McNeill also admitted that DeGroot advised him not to accept the July 1, 2004, plea offer before discovery was completed. *See* ECF No. 53 at 28 ("Well, basically [DeGroot] told me he's going to – you know, he's going to look into it and order discovery, wait for discovery to come and we figure out the charge then.") DeGroot similarly testified that he advised McNeill against accepting the July 2004 offer before discovery was completed, as there appeared to be Fourth Amendment search and seizure issues

---

[1] *See* ECF No. 53 at 28 ("I told [DeGroot] I wanted to take it, but I'm not admitting that I'm a convicted felon, I'm not pleading to the plea bargain based on a convicted felon, the 922(g), the second count.")

9

that needed to be explored.[2]   *See* ECF No. 52 at 19 (DeGroot testified that "it was too early in the case to make that decision," as early discovery indicated that that there may have been Fourth Amendment problems which "would give rise to a good basis to have a motion to suppress.")

The testimony of McNeill and DeGroot conflicts, however, with regard to McNeill's willingness to accept the May 2005 10-year plea offer and his rationale for rejecting this offer. McNeill testified that he told counsel that he was willing to take the May 12, 2005, plea offer, but he was not going to admit to being a convicted felon.   (ECF No. 53 at 34) ("So I told him, you know, I'm willing to take the plea but, you know, I'm not admitting to the convicted felon.   You know, I didn't – and that was it . . .   I told him, you know inform the Government.   I would like for him to inform the Government that I'm not a convicted felon, that I'll take the plea but I'm not going to admit to the convicted felon.")   On the other hand, DeGroot testified that, when he spoke with McNeill about the May 12, 2005, plea offer, it was his "intent that he would look at the plea with a little greater scrutiny" (ECF No. 52 at 42), but McNeill chose to litigate the Fourth Amendment issue.   *See* ECF No. 52 at 33 ("It was expressed to me that, you know, [McNeill] felt that the search was defective and ultimately he would be borne out with that, you know, attitude.")

This Court finds that McNeill rejected the July 2004 plea offer based on counsel's advice that it was premature, in light of the potential Fourth Amendment issue and the pending discovery. Accordingly, counsel's deficiency in failing to discern the nonexistent felony conviction was not material to McNeill's rejection of this offer.   With regard to McNeill's willingness to accept a plea offer in May 2005, this Court finds DeGroot more credible than McNeill, and finds that it is

---

[2] McNeill was arrested by New Jersey authorities on June 3, 2004, and the United States filed a criminal complaint against him on June 14, 2004

more likely than not that McNeill rejected the May 12, 2005, offer involving a 10-year term not

because he was unable to provide a factual basis for being a convicted felon, but because he wanted

to fight the Fourth Amendment issue at trial and, if necessary, on direct appeal (which is exactly

what he did).[3]

McNeill's present attorney nevertheless argues that this Court should reject DeGroot's

testimony on this point because it would have been irrational for McNeill to have rejected the 10-

year plea offer in May 2005 after Judge Bassler had denied the motion to suppress, and after

McNeill had learned that his girlfriend, who was aware of the second gun and drugs in McNeill's

father's car, was cooperating with the government.  While McNeill's rejection of a 10-year plea

offer because he elected to fight the Fourth Amendment issue may appear in hindsight to have

been unwise or even foolhardy, this Court must base its decision in this case on the evidence

presented at the evidentiary hearing and the credibility of DeGroot and McNeill.  After all, it is

the defendant who possesses "the ultimate authority" to decide whether to accept a plea bargain,

*Florida v. Nixon,* 543 U.S. 175, 187 (2004), and defense counsel must not "override his client's

desire . . . to plead not guilty[.]"  *Burt v. Titlow,* 134 S.Ct. 10, 17 (2013) (quoting *Brookhart v.

Janis,* 384 U.S. 1, 7-8 (1966)).  DeGroot candidly and repeatedly admitted, on direct and cross,

---

[3] The record of McNeill's criminal proceeding supports this Court's finding that McNeill rejected the May 12, 2005, plea offer because he chose to fight the Fourth Amendment issue.  Specifically, although Judge Bassler had denied McNeill's suppression motion on March 24, 2005, on February 14, 2006, McNeill filed a motion to reopen the suppression motion.  *See United States v. McNeill,* Crim. No. 04-0514 (WGB), ECF Nos. 16, 28.  On March 22, 2006, Judge Bassler granted the motion to reopen the suppression motion and ordered an evidentiary hearing on the suppression motion; on March 29, 2006, after conducting the evidentiary hearing, Judge Bassler again denied the motion to suppress.  *Id.* at ECF Nos.  31, 35.  McNeill argued on direct appeal that the court erred in denying (1) his motion to suppress the evidence found as a result of the initial warrantless search of his motel room and (2) his motion for a judgment of acquittal.  *See United States v. McNeill,* 285 F.App'x 975, 977 (3d Cir. 2008), *cert. denied,* 556 U.S. 1270 (2009).

that he was wrong and deficient in failing to identify the non-existence of a prior felony conviction. In light of this admission, this Court sees no reason that DeGroot would then testify falsely as to the facts concerning McNeill's unwillingness to accept the 10-year plea offer in May 2005. DeGroot's answer to the question as to whether he warned McNeill of the risks of going to trial was quite credible:   DeGroot testified that he warned McNeill several times, adding "I happened to like the young man, and I thought, you know, he had a little too much testosterone than brains, you know?"   (ECF No. 52 at 73.)   McNeill's testimony concerning his rejection of the May 2005 plea offer was vague, and he had everything to gain and nothing to lose by testifying that he would have accepted the offer, but for counsel's failure to discern that he could not plead guilty to being a convicted felon in possession of a gun.   In light of the credible testimony of DeGroot and the vague self-serving testimony of McNeill, this Court finds that McNeill has not carried his burden of showing that there is a reasonable probability that, but for counsel's error in failing to discern the non-existence of a prior felony conviction, McNeill would have accepted a revised plea offer to a 10-year term.   *See Shotts v. Wetzel,* 724 F.3d 364, 376 (3d Cir. 2013) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.") (quoting *Lafler,* 132 S.Ct. at 1384)); *see also United States v. Seeley,* ___ F.App'x ___, 2014 WL 3511727 *5 (3d Cir. July 17, 2014) (affirming denial of ineffective assistance of counsel during plea negotiations claim in § 2255 case for failure to show prejudice where counsel testified at an evidentiary hearing that, "throughout her dealings with her client, Seeley never gave her any indication that she was interested in . . . pleading guilty [and] Seeley maintained a steadfast insistence that she was innocent.")

B.   Failure to Inform Claim and Sentencing Exposure Claim

McNeill's remaining two ineffective assistance of counsel during plea negotiations claims

are straightforward and fail because the evidence does not establish deficient performance.   He

claims that DeGroot was deficient in failing to inform him about a plea offer the government made

in a letter dated December 22, 2005 ("the failure to inform argument"), and that DeGroot was

deficient in communicating a 15-year plea offer made on March 20, 2006, because counsel did not

tell McNeill that that he faced a mandatory sentence of 40 years in prison if he rejected the 15-

year offer ("the sentencing exposure argument").   As explained below, this Court finds that it is

more likely than not that DeGroot informed McNeill of the December 22, 2005, plea offer, and

that DeGroot advised McNeill of his 40-year sentencing exposure before McNeill rejected the

March 20, 2006, plea offer.   Because McNeill has not shown deficient performance, his "failure

to inform" and his "sentencing exposure" claims fail.

In his "failure to inform" argument, McNeill contends that counsel did not inform him of

a plea offer the government communicated to DeGroot in a letter dated December 22, 2005.[4]

(Exhibit 11.)   McNeill testified on direct that he did not receive DeGroot's letter dated December

23, 2005 (Exhibit 11A), advising him of the government's December 22, 2005, plea offer of 180

months in prison in exchange for his pleading guilty to the three count indictment that was returned

---

[4] In the December 22, 2005, letter, AUSA Camelia M. Valdes confirms the government's
discovery of the second gun and drugs found in car possessed by McNeill's father, refers to the
Supreme Court's ruling in *United States v. Deal,* 508 U.S. 129 (1993), and states that, if McNeill
is indicted and convicted of two violations of 924(c), then the second conviction will carry a
mandatory consecutive term of imprisonment of not less than 25 years.   (Exhibit 11.)   The AUSA
offers a plea to the pending three count indictment, carrying a mandatory minimum of 180 months,
as opposed to the mandatory minimum of 480 months, if the indictment is superseded and McNeill
is convicted on the superseding indictment.   *Id.*

in September 2005.[5]   McNeill testified that he did not know about the plea offer until he learned

of it in this § 2255 case.   DeGroot testified that he was not aware of the Supreme Court's decision

in *Deal v. United States,* 508 U.S. 129, 131 (1993), until the AUSA brought it to his attention in

the letter dated December 22, 2005, and that he sent the December 23, 2005, letter to McNeill

because he was not able to get to the jail to see him until after the Christmas holiday.   DeGroot

testified that he knew McNeill had received the December 23, 2005, letter because he spoke with

McNeill about the letter at great length when he discussed the plea offer with him at the jail on

December 26, 2005.   DeGroot testified that McNeill rejected this plea offer because "[h]e had

become what I would consider almost myopic in looking at the search and seizure issues, [meaning

that] he was just looking at that and not looking at the big picture."   (ECF No. 52 at 58.)

      This Court finds DeGroot's testimony with respect to the December 22, 2005, plea offer

more credible than McNeill's testimony.   This Court finds that it is more likely than not that

DeGroot communicated the December 22, 2005, plea offer of a 15-year sentence to McNeill in the

December 23, 2005, letter and in person at the jail on December 26, 2005, and strongly suggested

that he accept the plea.   Accordingly, this Court rejects McNeill's claim that DeGroot was

constitutionally deficient in failing to communicate this plea offer to him.

---

[5] In the December 23, 2005, letter, DeGroot informs McNeill of the newly discovered gun and heroin found after his father consented to a search of the Ford Explorer, encloses the decision in *United States v. Deal,* and informs McNeill of the 180-month plea offer.   (Exhibit 11A.). DeGroot states that, "if you choose not to take the plea agreement, then, with the inclusion of the [new charges], you will face an additional 300 months, totaling a term of imprisonment of 480 months," because the gun in the hotel room and the gun in the car "are treated as two separate offenses and you receive consecutive sentences for them."   *Id.*   DeGroot concludes:   "The length of the potential sentences if we lose this trial have gone up so much that I really want you to consider the wisdom of the trial.   I will of course be guided by your decision and will put in as much effort as I can and fight as hard as I can for you in trial if you choose to elect to do so.   But I want you to be fully aware of the worst that may happen."   *Id.*

In his "sentencing exposure" claim, McNeill claims that DeGroot's advice regarding the March 20, 2006, plea offer of 15 years (Exhibit 15) was deficient because, although he communicated the offer to McNeill, counsel did not tell McNeill that that he faced a mandatory sentence of 40 years in prison if he rejected the offer and he was convicted at trial of the six charges in the second superseding indictment.   This plea offer involved McNeill's pleading guilty to counts one and two of the second superseding indictment and the dismissal of counts three through six, and a 15-year term.   *Id.*   McNeill testified that counsel told him that, "if I go to trial I'm going to face the same amount of time as with the offer of the plea because it's all part of the June 3rd offense . . . .   I'm going to face 10 years and 5 years because it's going to get merged, they [are] going to have to merge them [] if I'm convicted, because it's all part of the same offense . . . .   He said that, you know, they can't give you no more than the plea bargain, no more than 15 years with the offer because it's all linked and related to the June 3rd offense."   (ECF No. 53 at 54.)   McNeill testified that he rejected the March 20, 2006, plea offer of 15 years because DeGroot told him he could only be sentenced to 15 years if he were convicted, so there was no downside to rejecting the 15-year plea.   *Id.* at 54-56.   DeGroot, however, testified that he had advised McNeill by way of the December 23, 2005, letter, and in person on December 26, 2005, of the government's threat to bring a second superseding indictment, and that, with these additional charges, his sentencing exposure increased to a mandatory 40-year term in prison.   (ECF No. 52 at 59-68.)   DeGroot testified that McNeill wanted him to try the case.   *Id.* at 64.   In assessing the risks, DeGroot explained that he looked at McNeill's case "in two different ways as the matter progressed.   Early on I felt it should have been tried; later on I felt that the risk to this young man was much too great."   *Id.* at 72.

15

After considering all the evidence, this Court finds that the preponderance of the evidence shows that DeGroot knew by the time he received the government's December 22, 2005, letter that if, as threatened, the government brought a second superseding indictment containing new charges based on the gun and drugs discovered in a search of the father's car, that the charges would not merge and that McNeill would face a mandatory 40-year sentence if he were convicted on the second superseding indictment; this Court further finds that it is more likely than not that DeGroot advised McNeill of his 40-year exposure via the December 23, 2005, letter (with the government's December 22, 2005, letter attached), as well as in person on December 26, 2005, but McNeill nevertheless wanted to try the case and fight the Fourth Amendment issue. Accordingly, this Court rejects McNeill's claim that counsel was constitutionally deficient in failing to advise him that he faced a 40-year mandatory sentence if he rejected the 15-year plea offer dated March 20, 2006.

C.      Certificate of Appealability

McNeill has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).  *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## II.   CONCLUSION

After an evidentiary hearing, this Court finds that McNeill has not carried his burden of showing that counsel was constitutionally deficient in plea negotiations and that, but for counsel's deficient performance, the outcome of the plea process would have been different.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

DATED: August 19, 2014