**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORRIE MCNEILL, | Civil No. 09-5983 (WJM) |
| Petitioner, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |
| UNITED STATES OF AMERICA, | Criminal No. 04-0514 (WJM) |
| Petitioner, | |
| v. | **OPINION** |
| ORRIE MCNEILL, | |
| Respondent. | |

**APPEARANCES**:

    JEROME A. BALLAROTTO, Esq.
    143 Whitehorse Avenue
    Trenton, NJ 08610
    Attorney for Orrie McNeill

    SHIRLEY UCHENNA EMEHELU, Assistant U.S. Attorney
    PAUL J. FISHMAN, United States Attorney
    970 Broad Street
    Newark, NJ 07101
    Attorneys for United States

**MARTINI, District Judge**:

Presently before the Court is a motion to reconsider (ECF No. 58) this Court's Order (ECF No. 56) denying Petitioner Orrie McNeill's motion to vacate, set aside, or correct, pursuant to 28 U.S.C. § 2255, a 481-month sentence imposed by the Honorable William G. Bassler on August 8, 2006, in United States v. McNeill, Crim. No. 04-0514 (WGB) judgment (D.N.J. Aug. 8, 2006), aff'd, 285 F.App'x 975 (3d Cir. 2008).[1]   The Government filed a letter brief opposing the motion for reconsideration.  (ECF No. 58.)   This Court ordered the parties to brief the effect, if any, of United States v. Bennett, 588 F.App'x 159 (3d Cir. 2014), on the motion for reconsideration and the Court's rationale for denying one of the ineffective assistance of counsel during plea negotiations claims McNeill's presented in his § 2255 motion.   The parties thereafter responded.

After considering the arguments of the parties and in light of Bennett, a § 2255 case decided by the Third Circuit after the denial of McNeill's § 2255 motion, the Court will grant the motion to reconsider the Order denying McNeill's 2255 motion solely with respect to his claim that counsel was constitutionally ineffective during plea negotiations regarding the May 12, 2005, plea offer, extended by letter dated September 1, 2005.   The Court found in its prior Opinion that

---

[1] As this Court noted in its prior Opinions, the Government made several plea offers and filed two superseding indictments. Ultimately, the jury convicted McNeill of two counts of heroin possession with intent to distribute, in violation of 21 U.S.C. § 841, and two counts of firearm possession in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924.   Judge Bassler sentenced McNeill to 481 months or one month above the statutory minimum sentence, which included a ten-year mandatory minimum on the count of possession with intent to distribute more than one kilogram of heroin, a five-year mandatory minimum consecutive term on the first count of possession of a weapon in furtherance of a drug trafficking crime, and a twenty-five-year mandatory minimum on the second count of possession of a weapon in furtherance of a drug trafficking crime, which by statute must run consecutively to any other sentence imposed.   See United States v. McNeill, 285 F. App'x 975, 978 n. 2 (3d Cir. 2008), cert. denied, 556 U.S. 1270 (2009).

2

defense counsel Robert DeGroot was constitutionally deficient in failing to identify that McNeill was not a convicted felon but rejected the claim because McNeill did not establish prejudice. Specifically, the Court did not find McNeill credible when he testified that he would have pleaded guilty, but for DeGroot's failure to provide competent legal advice regarding the plea offer. Under the rationale of United States v. Bennett, however, this determination was an error that led the Court to erroneously determine that McNeill had not shown prejudice.  To correct this clear error of law and prevent manifest injustice, the Court will grant McNeill's motion to reconsider whether he has shown that there is a reasonable probability that DeGroot's failure to provide competent legal advice during plea negotiations prevented McNeill from intelligently evaluating the May 12, 2005, plea offer, extended by letter dated September 1, 2005.

In addition, after reconsideration and for the reasons explained below, the Court holds that there is at least a reasonable probability that, in the absence of DeGroot's deficient performance during plea negotiations, McNeill would have pleaded guilty to possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a) and (b)(1)(A)(i) and received a sentence of 10 years in prison instead of 40.   The Court will vacate the judgment of conviction and direct the Government to re-offer McNeill the May 12, 2005, plea offer without the requirement that he plead guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

## I.   MOTION TO RECONSIDER

A.    Standard for Reconsideration

"The scope of a motion for reconsideration . . . is extremely limited."   Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011).   A proper motion for reconsideration "must rely on one of three grounds:   (1) an intervening change in controlling law; (2) the availability of new evidence; or (3)

the need to correct clear error of law or prevent manifest injustice." Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)).

B.   Merits of Motion for Reconsideration

The evidentiary hearing in this case involved three Sixth Amendment claims of ineffective assistance of counsel during plea bargaining. First, McNeill claimed that counsel was deficient with respect to plea offers dated July 1, 2004, and May 12, 2005, because these plea offers required McNeill to plead guilty to being a felon in possession of a firearm contrary to 18 U.S.C. § 922(g), but DeGroot did not advise McNeill that he could not plead guilty to that charge because he had no prior felony conviction. Second, McNeill claimed that counsel was deficient in failing to inform him about a 15-year plea offer the government made in a letter dated December 22, 2005. Third, McNeill argued that counsel was deficient in communicating a 15-year plea offer made on March 20, 2006, because counsel did not tell McNeill that that he faced a maximum sentence of 40 years in prison if he rejected the 15-year offer.

McNeill does not argue that the Court should reconsider the second and third grounds set forth above and the Court sees no basis to sua sponte reconsider the denial of those grounds. The motion for reconsideration focuses on McNeill's claim that DeGroot's advice with respect to the Government's May 12, 2005, plea offer, extended until September 7, 2005, was deficient. McNeill "asks this Court to reconsider . . . the claim of ineffective assistance of counsel based on the fact that Mr. DeGroot never communicated Mr. McNeill's decision to take the May 12, 2005 plea offer or his instruction to inform the United States Attorney that he would plead guilty to Count One, but could not plead to Count Two because he was not a convicted felon [and t]his failure continued even after the deadline extended in the September 1, 2005 letter." (ECF No. 57-

4

1 at 3.)   The Government argues that this argument does not warrant reconsideration because this Court "squarely addressed and soundly rejected" the ineffective assistance claim concerning the May 12, 2005, plea offer.   (ECF No. 58 at 3.)

McNeill further contends that under the rationale of Bennett the Court must "focus on the state of mind of the defendant and the confusion and misunderstandings caused by the deficiencies and failings of his trial counsel."   (ECF No. 61 at 5.)   The Court agrees.   McNeill argues that he "was denied the sufficient information to adequately engage in effective plea negotiations with the Government from day one.   His lawyer was completely ignorant of his non status as a convicted felon and foreclosed his ability to adequately advocate for a plea agreement that was acceptable to Mr. McNeill."   Id. at 6.   He further argues that because DeGroot failed to recognize that McNeill was not a convicted felon, he failed to utilize that fact in plea negotiations, and, if he had, the absence of a prior felony could have influenced the Assistant United States Attorney in exercising his or her prosecutorial discretion. On the other hand, the Government argues that Bennett is distinguishable as "McNeill (unlike Bennett) was not misadvised about the sentencing exposure that he faced if he went to trial."   (ECF No. 60 at 3.)   In addition, the Government argues that, "[a]lthough the [attorneys] mistakenly believed that McNeill's prior conviction was a felony, it is uncontested that the felon-in-possession charges had no impact upon McNeill's sentencing exposure" and that McNeill, therefore, had the facts he needed to make a sound choice.   Id. at 4.

The Court found in its prior Opinion that, although counsel's advice regarding the May 12, 2005, plea offer was constitutionally deficient, there was no Sixth Amendment violation because McNeill did not establish prejudice.   Specifically, relying on DeGroot's testimony that McNeill's rationale for not accepting the May 12, 2005, plea offer (after Judge Bassler denied McNeill's

motion to suppress) was that McNeill wanted to nevertheless continue fighting the Fourth Amendment issue, the Court found McNeill's testimony that he would have pleaded guilty with adequate advice not to be credible.  (ECF No. 55 at 12) ("In light of the credible testimony of DeGroot and the vague self-serving testimony of McNeill, this Court finds that McNeill has not carried his burden of showing that there is a reasonable probability that, but for counsel's error in failing to discern the non-existence of a prior felony conviction, McNeill would have accepted a revised plea offer to a 10-year term.")  McNeill argues, and the Government disagrees, that the Court's prior Opinion overlooked the extension of the May 12, 2005, offer by the Government in a letter dated September 1, 2005, and that, in any event, the Court should reconsider the claim to correct clear error and prevent manifest injustice.

The Court agrees with McNeill that its Opinion did not address the extension of the May 12, 2005, plea offer until September 7, 2005.  In addition, the Third Circuit's opinion in United States v. Bennett leads the Court to conclude that it erred in rejecting McNeill's ineffective assistance of counsel during plea negotiations claim with regard to the May 12, 2005, plea offer, as extended by letter dated September 1, 2005.  In Bennett, the Third Circuit reversed the order of the United States District Court for the Eastern District of Pennsylvania denying Bennett's § 2255 motion.  Bennett claimed that trial counsel's failure to investigate Bennett's record well enough to give him accurate advice and counsel's failure to give him accurate information about potential sentences interfered with Bennett's ability to make informed choices about his case, causing him to pass up an opportunity to make an open plea that might have lowered his Guidelines range and sentence.  Like McNeill, Bennett testified that he would have pleaded guilty but for his attorney's deficient advice.  And like this Court, the Eastern District of Pennsylvania did not believe Bennett's testimony that he would have pleaded guilty because Bennett's uncle testified that Bennett told him

6

well before trial that he wanted to make the Government prove their case.   The Eastern District of
Pennsylvania found that Bennett was not credible and based on the uncle's testimony that he "was
single-minded about going to trial, making any discussion of pleas a waste of time."   Id. at 161.   The
Third Circuit reversed, holding that the court's "determination that Bennett was not credible" was error
and "that this error led the District Court to reach the wrong conclusion" on prejudice.   Id.   The Court
of Appeals directed the District Court to grant Bennett's § 2255 motion, vacate the sentence, and
resentence Bennett as if he had entered an open guilty plea on the day that jury selection began.   The
court explained its rationale as follows:

> The truth is that we will never know for sure if Bennett would have pleaded guilty if
> he knew all of the facts.   But, we do know that his judgment was clouded by
> misunderstanding up through the time of his trial because his counsel did not do his job
> . . . .   Under these circumstances, it is simply impossible to conclude that Bennett was
> reasonably capable of making up his mind about a plea, whether for or against.   He
> did not have the facts he needed to make a sound choice.   Because of this, the District
> Court made a clear error when it decided as a fact that – in spite of what he said –
> Bennett was determined to go to trial.

588 F.App'x at 161.

Like the District Court in Bennett, based on DeGroot's testimony concerning McNeill's
desire to pursue the Fourth Amendment issue, this Court did not find McNeill credible when he
testified that he would have taken a guilty plea but for DeGroot's failure to identify that he could
not plead guilty to being a felon in possession of a firearm.   In light of the holding and rationale
of Bennett, this Court's finding that McNeill was not credible was error; this error led the Court to
the wrong conclusion about whether there is a reasonable probability that McNeill would have
taken the May 12, 2005, plea deal if DeGroot had properly advised him.   To rectify this clear legal
error and prevent manifest injustice, the Court will grant McNeill's motion to reconsider his claim
that counsel was deficient in failing to properly advise him during plea negotiations with respect
to the May 12, 2005, offer.   The Court will vacate the Order denying the § 2255 motion and

7

reconsider the claim that DeGroot was constitutionally deficient during plea negotiations with respect to the May 12, 2005, plea offer, as extended on September 1, 2005.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2255, this Court has the authority to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.   The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  Id. at 687.  A defendant must "show that counsel's representation fell below an objective standard of reasonableness" id. at 687-88, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694 (citations omitted).  To establish ineffective assistance of counsel in the plea negotiation context, a defendant must show:  (1) counsel's advice during the plea process was not "'within the range of competence demanded of attorneys in criminal cases,'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)), and (2) "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the

plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, 132 S.Ct. 1376, 1385 (2012).  "Regarding the interplay between Strickland and § 2255, if [defendant] shows both elements of Strickland, he satisfies the requirements of § 2255."  United States v. Travillion, 759 F.3d 281, 259 (3d Cir. 2014).

### III.   FINDINGS AND LEGAL CONCLUSIONS

A.   Testimony

On July 1, 2004, within two weeks of McNeill's arrest, the Government made the first plea offer.  This offer required him to plead guilty to the two charges in the complaint – being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and possession with intent to distribute more than one kilogram of heroin in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(i).  (ECF No. 30-1 at 7-16.)   This first offer, like the May 12, 2005, offer, states that the § 841 charge carries a statutory minimum sentence of 10 years in prison and a statutory maximum of life; the § 922(g) charge carries a statutory maximum sentence of 10 years in prison; the sentence on each count may run consecutively; and the sentence to be imposed is within the sole discretion of the sentencing judge.  (ECF No. 30-1 at 9.)

McNeill testified that when DeGroot communicated the first plea offer to him, he told DeGroot that he couldn't plead to being a felon in possession of a gun because he was not a convicted felon.  In any event, the testimony of McNeill and DeGroot establishes that McNeill rejected the July 1, 2004, offer after DeGroot advised McNeill that a plea was premature since there was a potentially meritorious Fourth Amendment issue concerning the search that resulted

9

in the discovery of the heroin and the gun.   Therefore, although DeGroot failed to advise McNeill that he could not legally plead guilty to being a felon in possession of a firearm, this failure did not affect the outcome of the plea process with regard to the July 1, 2004, offer.

The Government made its second plea offer on May 12, 2005, about a month and one-half after Judge Bassler denied McNeill's motion to suppress.   (ECF No. 30-1 at 19-25.)   The May 12, 2005, plea offer is generally the same as the first offer, except it is attached to a letter from the Assistant United States Attorney stating that, unless McNeill returned the executed agreement by May 20, 2005, the Government would seek to supersede the indictment to add a charge under 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime), which carried a mandatory consecutive five-year term of imprisonment.   (ECF No. 30-1 at 19.)   As DeGroot had not responded to the May 12, 2005, plea offer (DeGroot testified that he was stalling), by letter dated September 1, 2005, the Assistant United States Attorney stated that she would seek the superseding indictment adding the § 924(c) charge, which carries a mandatory consecutive five-year term of imprisonment, unless she received the executed plea agreement dated May 12, 2005, by September 7, 2005.

McNeill testified that when DeGroot informed him of the May 12, 2005, plea offer he told DeGroot that he was "willing to take the plea but, you know, I'm not admitting to the convicted felon." Id. at 34.   He testified that he showed DeGroot the state judgment of conviction and DeGroot said he would take care of it but McNeill "never heard" anything from counsel.   Id. at 34-35.

The United States called DeGroot.   When asked on direct if he had communicated the May 12, 2005, plea offer to McNeill, DeGroot answered "Yes" and when asked if McNeill had

accepted the plea offer, DeGroot responded "No."   (ECF No. 52 at 32-33.)   In the next question,

the Assistant United States Attorney asked:   "Did Mr. McNeill provide a rationale as to why he

did not accept this plea offer?"   Id.   DeGroot answered:   "It was expressed to me that, you know,

he felt that the search was defective and ultimately he would be borne out with that, you know,

attitude."   Id. at 33.   DeGroot testified that he had not responded to the Assistant United States

Attorney's May 12, 2005, plea offer because he "was stalling" but on September 1, 2005, the

Assistant United States Attorney sent a letter stating that the additional time to consider the plea

offer would end on September 7.   Id. at 45-46.   DeGroot testified that the next day he sent a letter

to McNeill with the September 1 and May 12, letters from the Assistant United States Attorney

attached.   When asked if he counseled McNeill as to whether to accept the still pending May 12,

2005, plea offer, DeGroot testified:   "Did I say to him:   I think you should take it or not take it?

I did not."   (ECF No. 52 at 42.)   When asked whether there was a discussion as to whether to

accept the offer, DeGroot testified:

> We talked about it and, you know, deferred to, you know, what his opinion was.   I
> wrote the case analysis with the intent that he should look at it as I was ratcheting
> it up, you know, or increasing my discussion to him about looking at the plea.   You
> know, I talked to him about Leslie, the fact that his girlfriend I knew at that point
> was testifying against him.   You know, perhaps I was too subtle, you know.   I
> mean, but that – it was my intent that he would look at the plea with a little greater
> scrutiny.

(ECF No. 52 at 42.)

Significantly, DeGroot could not remember whether he spoke to McNeill by telephone or

in person, and he did not testify as to when he advised McNeill regarding the May 12 plea offer,

as extended.[2]  Id. at 44.   Moreover, DeGroot did not specify the date on which he responded to the Assistant United States Attorney regarding the plea offer or what he said when he responded. Notably, DeGroot did not deny that McNeill told him that he could not plead guilty to being a felon in possession of a firearm because he was not a convicted felon, as he was not asked this question at the evidentiary hearing.

On cross-examination, DeGroot acknowledged that McNeill had been unfairly prejudiced in plea negotiations because DeGroot misread the disorderly persons conviction and failed to identify that McNeill was not a convicted felon.  (ECF No. 52 at 75-76.)   DeGroot further acknowledged that it was impossible for McNeill to have accepted the May 12 plea offer as it stood, but if he had informed the Government of the disorderly persons conviction, the Government would have likely accepted a guilty plea to the 841 charge alone, since the 922(g) charge had no impact on the sentence.   DeGroot indicated that McNeill's justification for rejecting "the September and even the December plea offers [was that] he felt the search was bad and he would be vindicated," but DeGroot conceded on cross that "there was no basis in law or fact for that to happen."  (ECF No. 52 at 99.)   DeGroot further acknowledged on cross that after the motion to suppress was denied in March 2005, McNeill faced "almost certain conviction with no real defense."  Id. at 100.

---

[2] DeGroot's recollection of plea negotiations was often less than crystal clear.  For example, referring to the subsequent March 20, 2006, plea offer, made 10 days before trial, DeGroot testified that he "did not recall that other plea offer, but there appears to have been another one, and I have it in my file but I didn't have any recollection of it."  (ECF No. 52 at 60.)

B.     Deficient Performance

During discussion of the plea offer, DeGroot did not advise McNeill that it was not possible for him accept a plea requiring him to plead guilty to being a felon in possession of a firearm, since DeGroot did not identify that McNeill's only prior conviction was a disorderly persons offense. The Court held in its prior Opinion, and continues to hold, that DeGroot's failure to advise McNeill that he could not accept a plea requiring him to plead guilty to being a felon in possession of a firearm was deficient performance.   See Padilla v. Kentucky, 559 U.S. 356, 370 (2010) (holding that counsel's failure to inform her client that his plea carried a risk of deportation is deficient performance) (citation omitted); Dando v. Yukins, 461 F.3d 791, 798-99 (6th Cir. 2006) (finding that an attorney's conduct was deficient when he provided "flatly incorrect" advice").   In addition, the Court further concludes that DeGroot's failure to give McNeill DeGroot's professional judgment on the critical question as to whether or not he should accept the May 12, 2005, plea offer, after Judge Bassler denied the motion to suppress and DeGroot thought McNeill faced "almost certain conviction with no real defense," (ECF No. 52 at 100), contributed to and exacerbated this deficient advice regarding the plea offer.   See Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) ("[A]n accused is entitled to rely upon his counsel . . . to offer his informed opinion as to what plea should be entered."); Raysor v. United States, 647 F.3d 491, 492-92 (2d Cir. 2011) (holding that § 2255 movant asserted deficient performance under Strickland where "counsel failed to advise him as to whether [he] should accept or reject a particular plea offer by the government"); Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999) ("A defense lawyer in a criminal case has the duty to advise his client fully on *whether a particular plea to a charge appears to be desirable*.") (citations and internal quotation marks omitted) (emphasis in original);

13

United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) (observing that a defendant "is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)).

C.      Prejudice

        Where ineffective advice leads to a defendant's rejection of a plea offer, defendant must "show that but for the ineffective advice of counsel there is a reasonable probability . . . that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances[], that the court would have accepted its terms, and that the conviction or sentence or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."   Lafler, 132 S.Ct. at 1385.   The question here is whether, but for DeGroot's deficient plea advice, there is a reasonable probability that the Government would have modified the plea offer to eliminate the felon in possession charge, McNeill would have accepted a modified plea offer, Judge Bassler would have accepted the plea agreement's terms, as modified, and the conviction or sentence under the plea agreement (10 years) would have been less severe than the 40-year sentence received as a result of proceeding to trial.

        In its prior Opinion, the Court found that McNeill had not established prejudice because it believed DeGroot's testimony that McNeill wanted to go to trial to fight the Fourth Amendment issue and, therefore, the Court did not find McNeill credible when he testified that he would have taken the May 12, 2005, plea offer but for DeGroot's failure to identify that he was not a convicted felon.   On reconsideration, it appears that this Court did exactly what the Third Circuit condemned in Bennett:   the Court discounted the fact that DeGroot's advice to McNeill concerning the plea

14

offer was deficient, did not acknowledge that McNeill's decision about accepting the plea offer or going to trial was affected by DeGroot's deficient performance, and leaped to the erroneous and unsupported conclusion that there is not even a reasonable probability that accurate legal advice would have changed McNeill's decision regarding whether to proceed to trial.

DeGroot's plea advice was deficient because he didn't recognize that McNeill could not plead guilty to being a felon in possession of a gun, he didn't use that fact during plea negotiations, and he didn't advise McNeill whether or not to take a guilty plea even though the suppression motion had been denied and DeGroot thought that the chance of conviction (and the consequent imposition of a sentence greater than the sentence after a plea) was "almost certain with no real defense." (ECF No. 52 at 100.) The question is whether, if DeGroot had provided competent advice, there is a reasonable probability that the Government would have modified the plea agreement to delete the felon in possession charge, McNeill would have decided to plead guilty under the plea agreement, absent the 922(g) charge, and McNeill would have received a 10-year sentence.[3] In deciding this question, the Court must be mindful that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Moreover, "the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments." McMann, 397 U.S. at 769-770. The defendant "is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." Day, 969 F.2d at 43 (quoting Von Moltke v. Gillies, 332 U.S. 708, 721

_____

[3]  Perhaps the Government would not have decided to bring the second superseding indictment if DeGroot had advised the Government that McNeill was not a convicted felon.

(1948)).   Significantly, in deciding whether to plead guilty or go to trial, the defendant must have "a full understanding of the charges against him."   Brady v. United States, 397 U.S. 742, 748 n.6 (1995).

DeGroot acknowledged on cross-examination that his mistake foreclosed McNeill from taking advantage of the May 12, 2005, plea offer.   He also conceded that, if DeGroot had brought the disorderly persons offense to the attention of the Assistant United States Attorney, then it was likely that the Government would have accepted a plea to the 841 drug charge, without the 922(g) charge, since it would have resulted in the same 10-year sentence as the May 12, 2005, plea offer. (ECF No. 52 at 83.)   DeGroot also admitted on cross-examination that McNeill relied on his advice in deciding whether or not to take a plea.[4]   Yet, even after Judge Bassler denied the motion to suppress in March 2005 and DeGroot thought a conviction was almost certain, DeGroot did not advise McNeill whether or not DeGroot thought McNeill should plead guilty.

As the Bennett Court observed, no one will ever know with certainty what would have happened if DeGroot had competently advised McNeill during the plea process, but the absence of competent and sound legal advice prevented McNeill from making a knowledgeable and intelligent decision about whether to accept a modified plea offer or go to trial and face almost certain conviction on greater charges.   DeGroot testified that McNeill wanted to keep fighting the Fourth Amendment issue, but DeGroot had no personal knowledge what McNeill's decision would have been if DeGroot had provided competent advice.   By failing to give McNeill competent legal advice DeGroot "deprived him of the opportunity to make a reasonably informed decision

---

[4] McNeill was 26 years old and had minimal involvement in the criminal justice system, i.e., one disorderly persons conviction.

16

regarding whether to change his plea or proceed to trial." United States v. Booth, 432 F.3d 542, 550 (3d Cir. 2005). In fact, DeGroot himself admitted in a post-judgment motion he filed in McNeill's criminal case that "McNeill was unfairly prejudiced in the plea negotiations" because in each plea offer except the last one, McNeill "was asked to plea[d] guilty to something he was innocent of." United States v. McNeill, Crim. No. 04-0514 (WJM) Defendant's memorandum (D.N.J. July 31, 2006) (ECF No. 52 at 1, 2).

The Government argues that McNeill's decision to proceed to trial was not clouded by misunderstanding resulting from DeGroot's deficient advice because "it is uncontested that the felon-in-possession charges had no impact upon McNeill's sentencing exposure." (ECF No. 60 at 4.) However, the Government did not establish that McNeill knew that the felon in possession charge had no impact on his sentence, nor did the Government demonstrate that McNeill was capable of knowingly and intelligently deciding whether or not to change his plea when his attorney's plea advice was so clearly deficient. DeGroot did not testify that in explaining the May 12 plea offer he advised McNeill that the felon in possession charge had no impact on the sentence; the plea agreement itself states this charge carries a statutory maximum sentence of 10 years in prison which may run consecutively to the ten year statutory minimum for the 841 drug charge. (May 12, 2005 Plea Offer) (ECF No. 30-1 at 21). In addition, the plea agreement unequivocally states that the sentence to be imposed is within the discretion of the sentencing judge who may impose any reasonable sentence up to the statutory maximums. Id. Thus, the attorneys' undisputed assessment that the felon in possession charge had no impact on McNeill's sentencing exposure under the plea offer indicates nothing about whether there is a reasonable probability that, with competent advice, McNeill would have accepted a modified plea agreement. Rather, it

supports McNeill's showing of prejudice, i.e., there is a reasonable probability that, if DeGroot had identified the disorderly persons conviction, then he would have informed the Government and the Government would have modified the May 12, 2005, plea offer to delete the felon in possession charge.

Because DeGroot did not investigate McNeill's record enough to give him sound advice regarding the 2005 plea offer, McNeill did not have the legal advice he needed to be able to make an informed choice about whether to go to trial or take the plea.   McNeill testified that he would have taken the May 12, 2005, plea offer but for DeGroot's failure to recognize that he wasn't a convicted felon.   On reconsideration, the Court has no reason not to credit this testimony. Moreover, although DeGroot believed after denial of the motion to suppress that McNeill's chance of conviction on greater charges was almost certain and that he had no real defense, DeGroot did not advise McNeill that in his professional judgment McNeill should accept a modified plea offer. Had DeGroot given McNeill his professional judgment about the wisdom of going to trial, there is more than a reasonable probability that McNeill would have taken the plea offer with the felon in possession charge deleted.

The burden of proof in a case like this is quite low.   McNeill does not have to show that it is more likely than not that he would have pleaded guilty but for DeGroot's deficient performance.[5]

_____

[5] As explained by the Third Circuit,

> [Defendant] need not prove with absolute certainty that he would have pleaded guilty, that the district court would have approved the plea arrangement, and that he therefore would have received a lesser sentence.   Strickland v. Washington does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only "reasonable probability" that is the case.

He only has to show that there is a reasonable probability that, with competent advice from counsel, he would have accepted the May 12, 2005, plea offer, modified by the Government to delete the felon in possession charge, a task he has unquestionably met.   There is a reasonable probability that the Government would have modified the May 12, 2005, plea offer to delete the felon in possession charge, as the felon in possession charge had no effect on the sentence under the plea and it is obvious from the fact that the Government made two more plea offers after September 7, 2005, that the Government was inclined toward resolving the case with a plea agreement. McNeill's testimony, together with the disparity between the sentence resulting from the plea agreement (10 years) and the sentence he received (40 years) or could have received (life), establishes that there is at least a reasonable probability that McNeill would have accepted the May 12, 2005, plea offer, absent the felon in possession charge, if DeGroot had identified the disorderly persons offense and advised him to accept the modified plea in the face of almost certain conviction with no real defense.   See Smith v. United States, 348 F.3d 545, 552 (6th Cir. 2003) ("[T]he disparity between the plea offer and the potential sentence exposure [is] strong evidence of a reasonable probability that a properly advised defendant would have accepted a plea offer"); Mask v. McGinnis, 233 F.3d 132, 142 (2d Cir. 2000) ("[A] large disparity between the defendant's sentence exposure following a trial and his potential exposure had a plea offer been made.... coupled with [defendant's] statements that he would have accepted a reasonable offer as credited by the district court, satisfies the prejudice requirement."); United States v. Gordon, 156 F.3d 376, 380 (2nd Cir. 1998) (finding the disparity between the 84 months offered in the plea agreement

_____

Day, 969 F.2d at 45 n.8.

and the actual sentencing range of 262 to 327 months as "sufficient objective evidence . . . to support a finding of prejudice under Strickland in plea bargain context); Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996) (holding that counsel was deficient in failing to advise defendant that it was his professional judgment that it was wise to take the plea offer because acquittal was "almost impossible" and that with competent advice there is more than a reasonable probability that Boria would have decided "not to pursue the suicidal course he seemed bent upon following.") (cited with approval in United States v. Berry, 61 F. App'x 797, 800 (3d Cir. 2003)).   And there is no reason not to find that Judge Bassler would have accepted the plea agreement, as modified, and imposed a 10-year term of imprisonment instead of 40.

The Court will grant the motion to vacate the judgment imposing the 481-month sentence and direct the Government to offer McNeill the May 12, 2005, plea agreement absent the requirement that McNeill plead guilty to the 922(g) charge.   See Lafler, 132 S.Ct at 1389 (observing that where the "offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial . . , the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal.").   McNeill should notify the Court whether or not he accepts the plea agreement, as modified, and the Court will schedule the matter.

## IV.   CONCLUSION

This Court will grant McNeill's motion to reconsider the Order denying his § 2255 motion and, after reconsideration, will grant the motion to vacate the sentence.

WILLIAM J. MARTINI, U.S.D.J.

DATED:  3/3/16